Case No. 14-1815

# United States Court of Appeals for the Federal Circuit

**ILLUMINA, INC.**

*Plaintiff-Appellant,*

**v.**

**ARIOSA DIAGNOSTICS, INC.**

*Defendant-Appellee.*

Appeal from the United States District Court for the Northern District of California
Case No. 3:14-cv-01921, Judge Susan Illston

## NONCONFIDENTIAL RESPONSIVE BRIEF OF DEFENDANT-APPELLEE ARIOSA DIAGNOSTICS, INC.

David I. Gindler
Andrei Iancu
Josh B. Gordon
IRELL & MANELLA LLP
1800 Avenue of the Stars, Suite 900
Los Angeles, CA 90067
Tel. (310) 277-1010

*Attorneys for Defendant-Appellee
Ariosa Diagnostics, Inc.*

February 4, 2015

## CERTIFICATE OF INTEREST

Counsel for Defendant-Appellee Ariosa Diagnostics, Inc. certifies as follows:

1.  The full name of every party or amicus represented by us is:

    Ariosa Diagnostics, Inc.

2.  The name of the real party in interest represented by us is:

    None.

3.  All parent corporations and any public companies that own 10 percent or more of the stock of the parties represented by us are:

    Ariosa Diagnostics, Inc. is a wholly-owned subsidiary of Roche Molecular Systems, Inc. which is a wholly-owned subsidiary of Roche Holdings, Inc. and an indirect subsidiary of Roche Holding Ltd. Novartis AG, a publicly held company, owns more than 10% of voting shares of Roche Holding Ltd.

4.  The names of all law firms and the partners or associates that appeared for the parties now represented by us in the trial court or are expected to appear in this Court are:

| IRELL & MANELLA LLP | DURIE TANGRI LLP |
|---|---|
| David I. Gindler | Daralyn J. Durie |
| Andrei Iancu | Elizabeth Offen-Brown Klein |
| Josh B. Gordon | Clement S. Roberts |
| Sandra L. Haberny | |
| Arka D. Chatterjee | |
| Lauren N. Drake | |

Dated:  February 4, 2015        /s/ *David I. Gindler*

# TABLE OF CONTENTS

**Page**

STATEMENT OF RELATED CASES ................................................................. 1

STATEMENT OF THE ISSUES........................................................................ 1

STATEMENT OF THE FACTS AND THE CASE............................................... 2

    I.    INITIAL STATEMENT ...................................................................... 2

    II.    FACTUAL BACKGROUND ............................................................... 4

SUMMARY OF ARGUMENTS........................................................................ 13

ARGUMENT ................................................................................................... 17

    I.    THE DISTRICT COURT CORRECTLY FOUND THAT
    ARIOSA'S COUNTERCLAIMS ARE NOT SUBJECT TO
    ARBITRATION.................................................................................. 17

        A.    Arbitration Requires Party Agreement and no "Policy
        in Favor of Arbitration" Can Substitute for that
        Agreement ................................................................................ 17

        B.    Ariosa's Counterclaims are Excluded from Arbitration
        Under the Plain Language of the Dispute Resolution
        Provision ................................................................................. 20

        C.    The District Court Properly Did Not Apply Any
        "Policy In Favor of Arbitration" ............................................. 31

CONCLUSION ................................................................................................ 34

# CONFIDENTIAL MATERIAL OMITTED

The material omitted on pages 2, 5-7, and 10 contains information relating to the terms of the sale and supply agreement between the parties. This information has been designated confidential by Appellant Illumina, Inc.

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Anton/Bauer, Inc. v. PAG, Ltd.*,
    329 F.3d 1343 (Fed. Cir. 2003) .............................................................. 27

*AT & T Technologies, Inc. v. Commc'ns Workers of America*,
    475 U.S. 643 (1986).................................................................. 17, 19, 21

*Barnett Bank of Marion Cnty., N.A. v. Nelson*,
    517 U.S. 25 (1996).................................................................................. 25

*Bay Cities Paving & Grading, Inc. v. Lawyers' Mut. Ins. Co.*,
    5 Cal. 4th 854 (1993)........................................................................ 25, 32

*First Options of Chicago, Inc. v. Kaplan*,
    514 U.S. 938 (1995)................................................................................ 19

*Goldman, Sachs & Co. v. City of Reno*,
    747 F.3d 733 (9th Cir. 2014) *cert. denied sub nom. City of Reno,*
    *Nev. v. Goldman, Sachs & Co.*, 135 S. Ct. 477 (2014) ................... passim

*Granite Rock Co. v. Int'l Bhd. of Teamsters*,
    561 U.S. 287 (2010)........................................................................ passim

*Harkonen v. Sebelius*,
    2013 WL 5734918 (N.D. Cal. Oct. 22, 2013) ........................................ 25

*Illinois Tool Works, Inc. v. MOC Products Co., Inc.*,
    2010 WL 4314296 (S.D. Cal. Oct. 26, 2010)........................................ 30

*Illumina, Inc. v. Ariosa Diagnostics, Inc.*,
    2014 WL 3897076 (N.D. Cal. Aug. 7, 2014) .......................................... 3

*MacKinnon v. Truck Ins. Exch.*,
    31 Cal. 4th 635 (2003), *as modified on denial of reh'g* (Sept. 17,
    2003) ...................................................................................................... 32

*McCoy v. Mitsuboshi Cutlery, Inc.*,
    67 F.3d 917 (Fed. Cir. 1995) ................................................................. 27

**Page(s)**

*MedImmune, Inc. v. Centocor, Inc.,*
409 F.3d 1376 (Fed. Cir. 2005), *cert. granted, judgment vacated on other grounds,* 549 U.S. 1163 (2007) ...................................................... 27

*Metro. Life Ins. Co. v. Massachusetts,*
471 U.S. 724 (1985) ..................................................................... 24

*Morales v. Trans World Airlines, Inc.,*
504 U.S. 374 (1992) .............................................................. 25, 26

*Mundi v. Union Sec. Life Ins. Co.,*
555 F.3d 1042 (9th Cir. 2009) ..................................... 18, 26, 31

*Nat'l City Police Officers' Ass'n v. City of Nat'l City,*
87 Cal. App. 4th 1274 (2001) .......................................... 22, 23

*Pilot Life Ins. Co. v. Dedeaux,*
481 U.S. 41 (1987) ....................................................................... 24

*Shaw v. Delta Air Lines, Inc.,*
463 U.S. 85 (1983) ....................................................................... 24

*Wang Labs., Inc. v. Mitsubishi Electronics Am., Inc.,*
103 F.3d 1571 (Fed. Cir. 1997) .............................................. 10

*Zoran Corp. v. DTS, Inc.,*
2009 WL 160238 (N.D. Cal. Jan. 20, 2009) .................................... 27, 33

## Statutes

35 U.S.C. § 271 ....................................................................... 12

Cal. Civ. Code § 1641 ................................................................ 22

Cal. Civ. Code § 1644 ................................................................ 25

## Other Authorities

Black's Law Dictionary (5th ed. 1979) ............................................. 24

Black's Law Dictionary (6th ed. 1990) ............................................. 25

## STATEMENT OF RELATED CASES

No appeal from the underlying District Court case, *Illumina, Inc. v. Ariosa Diagnostics, Inc.,* Case No. 14-CV-01921 (the "Illumina Case"), was previously before this or another appellate court. The District Court related and consolidated the Illumina Case with *Verinata Health, Inc. et al v. Ariosa Diagnostics, Inc. et al*, Case No. 12-CV-05501 (the "Verinata Case"). Illumina, Inc. had acquired Verinata Health, Inc. in 2013, more than a year before the Illumina Case was filed. Although the Verinata Case involves different patents, the cases were consolidated because, *inter alia*, plaintiffs in both cases have accused the same product of patent infringement, and the parties, evidence, witnesses, legal issues, subject matter, and technology all overlap. Accordingly, issues in the Verinata Case may be affected by this Court's decision in this appeal.

## STATEMENT OF THE ISSUES

Whether Ariosa's counterclaims—which allege that Ariosa possesses a license to the patent asserted in Illumina's infringement claim against Ariosa, thereby providing Ariosa a complete defense to infringement as a matter of law— fall within the exclusion to arbitration for "disputes relating to issues of scope, infringement, validity and/or enforceability" of Illumina intellectual property rights.

## STATEMENT OF THE FACTS AND THE CASE

## I.    INITIAL STATEMENT

On April 25, 2014, Appellant Illumina, Inc. ("Illumina") filed a lawsuit accusing Appellee Ariosa Diagnostics, Inc. ("Ariosa") of infringing U.S. Patent No. 7,955,794 (the "'794 patent") by virtue of Ariosa's sole product, the Harmony® Prenatal Test. That lawsuit was filed over two years into the three-year term of the parties' Sale and Supply Agreement (the "Agreement"), pursuant to which Ariosa agreed to purchase sequencing equipment and other products exclusively from Illumina to operate the Harmony® Prenatal Test, and Illumina granted Ariosa licenses to Illumina intellectual property—and ███████████ ████████████████████████████████████████████—to make, sell, and practice the Harmony® Prenatal Test. Accordingly, when Illumina filed suit against Ariosa alleging infringement of the '794 patent, which issued to Illumina seven months before the Agreement was signed, Ariosa raised license and estoppel defenses and filed counterclaims for breach of contract and breach of the implied covenant of good faith and fair dealing (the "Counterclaims") on the grounds that Ariosa possesses an express or implied license to the '794 patent, thus contractually prohibiting Illumina from asserting that patent against Ariosa.

- 2 -

CONFIDENTIAL MATERIAL OMITTED

All of these disputes relating to Illumina's infringement allegations are currently before the District Court.[1] Illumina, however, urges this Court to compel arbitration of Ariosa's Counterclaims while the parties litigate Illumina's infringement action *and Ariosa's defenses of license and estoppel*. That arbitration demand is not supported by the parties' contract, which specifically excludes from arbitration all "*disputes relating to* issues of scope, infringement, validity and/or enforceability of any" Illumina intellectual property rights. As the District Court held, a license is a complete defense to patent infringement, and thus Ariosa's claim that it was granted an express or implied license to the '794 patent unambiguously relates to Illumina's patent infringement claim. JA0006 (*Illumina, Inc. v. Ariosa Diagnostics, Inc.*, No. C14-01921 SI, 2014 WL 3897076 (N.D. Cal. Aug. 7, 2014).

Illumina's position is internally inconsistent, for Illumina makes no objection to allowing Ariosa to litigate its license and estoppel defenses before the District Court, yet contends that the District Court lacks jurisdiction to hear Ariosa's Counterclaims, even though Ariosa's defenses and Counterclaims share the same fundamental factual premise—Illumina is contractually prohibited from suing Ariosa for infringement of the '794 patent because Ariosa possesses an

---

[1] On February 2, 2015, the District Court stayed the underlying litigation in its entirety pending the conclusion of several concurrent appeals (including this appeal), as well as *inter partes* review of the '794 patent.

express or implied license to the patent. This shared factual premise further confirms that Ariosa's Counterclaims "relate to" Illumina's claim of patent infringement and that the parties' dispute regarding the scope of Ariosa's license from Illumina should be litigated in one forum—the District Court. Therefore, as explained in detail below, the District Court's order denying Illumina's motion to dismiss Ariosa's Counterclaims in favor of arbitration should be affirmed.

## II.    FACTUAL BACKGROUND

Ariosa was founded in 2008 and, since its inception, has been focused on the development of an innovative, efficient, and cost-effective non-invasive prenatal test for chromosomal abnormalities in a fetus. The Harmony® Prenatal Test is the result of those efforts. Ariosa's Harmony® Prenatal Test employs a proprietary technology to determine whether a fetus is at risk of having an abnormal number of chromosomes (sometimes referred to as "aneuploidy"), which can lead to conditions such as Down Syndrome. Ariosa has quickly become a leader in the non-invasive prenatal testing industry, including with respect to the accessibility and utility of its test to pregnant women.

In 2010 and 2011, Ariosa raised capital from private investors, including from Illumina. As part of those discussions, Ariosa provided Illumina with confidential, technical information about the design and operation of the Harmony® Prenatal Test. On January 4, 2012, Ariosa entered into a three-year

Sale and Supply Agreement with Illumina, pursuant to which Illumina became Ariosa's exclusive supplier of the sequencing equipment ("Hardware") and chemical reagents ("Consumables") used to perform the Harmony® Prenatal Test. JA0405-25. Hardware and Consumables are both included in the definition of "Goods" in the Agreement. JA0406. The Agreement required Ariosa to "████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████. JA0407, § 2. At the time of the Agreement, and throughout most of its three-year term, the Harmony® Prenatal Test could only be performed on the Hardware, and using the Consumables, purchased from Illumina.[2]

In conjunction with Ariosa's agreement to purchase the Goods exclusively from Illumina, and to exclusively (or at least primarily) use Illumina's products, Illumina granted to Ariosa a non-exclusive license "under Core IP Rights in Goods to use and import . . . the Goods . . . ." JA0408, § 3(a). The Agreement defines "Core IP Rights in Goods" as "those Illumina Intellectual Property Rights that pertain to the Goods (and use thereof in accordance with their Documentation)

---

[2] The Agreement expired on January 4, 2015. Ariosa has begun to perform the Harmony® Prenatal Test on a different platform and no longer purchases Goods from Illumina.

CONFIDENTIAL MATERIAL OMITTED

other than Secondary Illumina IP Rights in Goods, which are expressly excluded from Core IP Rights in Goods." JA0405. The Agreement defines "Secondary IP Rights in Goods" as "the secondary Illumina Intellectual Property Rights that pertain to the Goods (and use thereof) only with regard to particular field(s) or application(s), and are not common to the Goods in all applications and fields." JA0407.

Under the Agreement, Ariosa was required to "identify and ensure that it has all rights from third parties and, with respect to Secondary IP Rights in Goods, all rights from Illumina that are necessary for its intended use of Goods." JA0408, § 4(a). Illumina, however, warranted and represented to Ariosa that, as of the Effective Date of the Agreement, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮" *See id.*

Moreover, although Illumina now suggests that the Agreement "specifically noted that Ariosa may need to obtain additional rights or licenses beyond the Core

CONFIDENTIAL MATERIAL OMITTED

IP Rights in Goods that were granted," Br. at 5, *nothing* in the Agreement suggests that Ariosa might need additional *Illumina* intellectual property beyond Secondary IP Rights. *See* JA0408, § 4(a). And, as noted, ████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

██████████████████████████████ *Id*. Therefore, Illumina's suggestion that Ariosa did not receive, but in fact required a license to, other Illumina intellectual property existing when the Agreement was executed fundamentally conflicts with the plain text of the Agreement and the conduct of the parties. *See id*., §§ 3-4.

After committing millions of dollars to developing and validating the Harmony® Prenatal Test using Illumina's sequencing platform (in reliance on the licenses, representations and warranties set forth in the Agreement), Ariosa commercially launched the test in March 2012. JA0096. The Harmony® Prenatal Test has been, and remains, the only product that Ariosa offers. As of May 15, 2014, Ariosa had tested over 247,000 pregnant women and the Harmony® Prenatal Test was available in over 90 countries. *Id*.

In October 2012, Verinata Health, Inc. ("Verinata"), one of several other companies offering a different non-invasive prenatal test in the marketplace, filed a lawsuit against Ariosa alleging that the Harmony® Prenatal Test infringes U.S. Patent No. 8,296,076 (the "'076 patent"). In November 2012, Verinata amended its

CONFIDENTIAL MATERIAL OMITTED

complaint to allege that Ariosa's test also infringes U.S. Patent No. 8,318,430 (the "'430 patent"). Shortly thereafter, in January 2013, Illumina acquired Verinata, making it a wholly-owned subsidiary of Illumina. As it announced publicly at the time, in doing so Illumina added to its portfolio "Verinata's verifi® prenatal test, a comprehensive non-invasive prenatal test (NIPT) for high-risk pregnancies, and what we believe to be the most comprehensive intellectual property portfolio in the NIPT industry." JA0103. In January 2014, Illumina absorbed Verinata into its Reproductive and Genetic Health business unit, changing the Verinata name to Illumina and incorporating the verifi® prenatal test and Verinata's intellectual property into its business strategy. *Id.*

On January 10, 2014, mere days after fully incorporating Verinata into its own business operations, Illumina sent a letter to Ariosa accusing Ariosa of breaching the Agreement, including because Ariosa had allegedly failed to "identify[] and ensure[] that it has all Secondary IP Rights in Goods that are necessary for it to use the Goods . . . under the Agreement." JA0379. Specifically, Illumina contended that Ariosa needed to license "Secondary IP Rights that [Illumina] has set out in the pending patent litigation against Ariosa," *id.*, *i.e.*, the '076 and '430 patents asserted by *Verinata* against Ariosa in the Verinata Case—patents that Illumina now contends are *not* Secondary IP Rights in Goods. Br. at 4-5. Illumina concluded that it was "confident that the patent litigation will resolve

this issue"—*i.e.*, Illumina's breach of contract claim—"in Illumina's favor." JA0379. In the January 10 letter, Illumina did not mention the '794 patent. Ariosa responded, denying any breach of the agreement. JA0106. The parties then continued to negotiate potential amendments and a potential extension to the Agreement. JA0107.

Those negotiations ended on April 24, 2014, when Illumina sent another letter to Ariosa that "repeated" the allegations made in January and revoked all previous offers to amend the Agreement, as well as its offer to extend the term of the Agreement. JA0107-08. Although the April 24 letter stated that Illumina was "not today terminating the current Agreement," Illumina reserved the right to do so. JA0108. Like the January 10 letter, Illumina did not mention the '794 patent in the April 24 letter.

The very next day, without warning or notice to Ariosa, Illumina filed another lawsuit again accusing the Harmony® Prenatal Test of patent infringement, this time of the '794 patent. Before even serving the complaint, Illumina issued a Business Wire press release announcing the filing of the infringement suit "seeking all available remedies, including injunctive relief," against Ariosa. JA0108. The timing of Illumina's April 24 letter and April 25 lawsuit appear to have been strategically planned: They came literally on the eve of Ariosa's planned roadshow in support of its announced Initial Public Offering.

JA0107-08. Faced with a lawsuit from its sole supplier, Ariosa canceled that roadshow and did not proceed with the Initial Public Offering.

The '794 patent was issued on June 7, 2011—about seven months before execution of the Agreement—and is assigned on its face to Illumina. JA0021. Although Illumina now contends that "it is unquestionable that Ariosa needed to obtain a license" to the '794 patent, Br. at 5, Illumina never suggested to Ariosa at any time prior to executing the Agreement in January 2012—despite receiving confidential, technical information about the Harmony® Prenatal Test as a prospective investor in Ariosa—that Ariosa needed a license to the '794 patent to operate its test. JA0108. Nor did it sue for patent infringement—waiting nearly three years from the patent's issuance to do so.

To the contrary, Illumina *invested in* Ariosa after significant due diligence and, seven months after the '794 patent issued, executed the Agreement with Ariosa—in which it either granted to Ariosa an express license to the '794 patent as part of the Core IP Rights in Goods or ███████████████████████████ ████████████████████████████████████████████████████████.

JA0408. As Ariosa has alleged and maintained, this latter representation by Illumina constitutes an implied license to the '794 patent. JA0358 (citing *Wang Labs., Inc. v. Mitsubishi Electronics Am., Inc.*, 103 F.3d 1571, 1580 (Fed. Cir. 1997) ("No formal granting of a license is necessary in order to give it effect. Any

CONFIDENTIAL MATERIAL OMITTED

language used by the owner of the patent, or any conduct on his part exhibited to another from which that other may properly infer that the owner consents to his use of the patent in making or using it, or selling it, upon which the other acts, constitutes a license and a defense to an action for a tort."). Moreover, Illumina performed under the Agreement for two years without demanding that Ariosa take an additional license to that patent—or any other patent—to operate the Harmony® Prenatal Test. Similarly, Illumina performed under the Agreement for two years without contending, as it does now, that the goods "Illumina supplies to Ariosa under the [Agreement] do not include the type of proprietary custom DNA assay optimization kits and techniques that are the subject matter of the '794 patent." Br. at 4.[3]

Accordingly, believing that it possessed a license, either expressly or impliedly, to the '794 patent, Ariosa raised license and estoppel defenses, among others, in its answer to Illumina's claim of patent infringement. JA0086-87. And, on June 11, 2014, Ariosa filed its Counterclaims against Illumina for breach of contract and breach of the implied covenant of good faith and fair dealing. JA0095-113. The Counterclaims are premised on the same allegations as Ariosa's license and estoppel defenses, namely that Illumina cannot assert the '794 patent against Ariosa on account of the licenses, representations, and warranties contained

---

[3] Notably, this contention is not supported by any citations or evidence. These issues are subject to discovery in the District Court.

in the Agreement—each of which precludes a finding of infringement because Ariosa possesses an express or implied license to that patent. JA0110-12.

Illumina moved to dismiss Ariosa's Counterclaims on the theory that they are subject to arbitration under Section 31(c) of the Agreement, the pertinent part of which states that:

> Subject to the terms and conditions of this Section 31(c), any dispute, claim or controversy arising out of or relating to the breach, termination, enforcement, interpretation or validity of this Agreement, shall be determined by arbitration.... This Section 31(c) shall not apply to, and no arbitration shall resolve, disputes relating to issues of scope, infringement, validity and/or enforceability of any Intellectual Property Rights.

JA0422, § 31(c).

On August 7, 2014, the District Court denied Illumina's motion to dismiss. JA0003-06. The District Court agreed with Ariosa that the Counterclaims "do not fall within the scope of this arbitration provision because [they] relate to issues of infringement of a patent." JA0005. Specifically, the District Court agreed that, because Ariosa's Counterclaims "are centered on its contention that it has been granted an express or implied license to the '794 patent, the counterclaims clearly relate to issues of patent infringement" because, for example, a defendant who is licensed to a patent has a complete defense to, and cannot be liable for, infringement of that patent. JA0005-06. Indeed, the District Court pointed to the Patent Act itself to support its analysis: "Under 35 U.S.C. § 271, a defendant can

only be liable for infringement if the allegedly infringing acts are carried out 'without authority.'" JA0005. Accordingly, after analyzing and interpreting the arbitration provision excerpted above, the District Court concluded that Ariosa's Counterclaims "unambiguously relate to issues of patent infringement" and therefore "are outside the scope of the arbitration clause." JA0006. On appeal, Illumina has not offered any arguments that warrant a reversal of the District Court's decision.

## <u>SUMMARY OF ARGUMENTS</u>

This appeal focuses on one question: Do Ariosa's Counterclaims, which are in response to Illumina's infringement allegations and are centered on the contention that Ariosa possesses an express or implied license to the '794 patent, present "disputes relating to" issues of scope, infringement, validity and/or enforceability of Illumina intellectual property rights? The answer is yes. And because the answer is yes, Ariosa's Counterclaims unambiguously fall into the express exclusion set forth in the arbitration provision. Ariosa is entitled to litigate these issues through its Counterclaims, just as it is entitled to litigate these issues through its license and estoppel defenses. These issues, whether litigated through Ariosa's license and estoppel defenses or its Counterclaims, belong in a single forum—the District Court.

Urging a different conclusion, Illumina's opening brief is filled with references and citations to cases suggesting that the District Court was obligated to adhere to a "federal policy in favor of arbitration" and the "presumption of arbitrability" that is sometimes applied when ambiguity exists as to whether the parties intended to arbitrate a particular dispute. But Illumina omits Supreme Court and Ninth Circuit case law that clearly establishes that such a policy, and such a presumption, may only be applied "where the scope of the agreement is ambiguous as to the dispute at hand" and "only where the presumption is not rebutted." *Goldman, Sachs & Co. v. City of Reno*, 747 F.3d 733, 742 (9th Cir. 2014) *cert. denied sub nom. City of Reno, Nev. v. Goldman, Sachs & Co.*, 135 S. Ct. 477 (2014).

Neither situation applies here. To the contrary, the District Court correctly determined that Ariosa's Counterclaims "*unambiguously* relate to issues of patent infringement." JA0006 (emphasis added). Citing the Patent Act itself for the proposition that a defendant may be found liable for patent infringement only when acting "without authority" from the patent holder, the District Court reasoned that "whether an accused infringer has been granted an express or implied license is an issue that *directly relates* to whether a patent has been infringed." JA0005-06 (emphasis added).

- 14 -

Illumina's arguments to the contrary are twofold: First, Illumina suggests that the parties only agreed to arbitrate certain "patent specific" issues, such as infringement, claim construction, and patent validity. Br. at 15. This is inconsistent with the plain language of the Agreement, which expressly provides that the arbitration provision "shall not apply to, and no arbitration shall resolve, *disputes relating to* issues of scope, infringement, validity and/or enforceability of any Intellectual Property Rights." JA0422, § 31(c) (emphasis added). Whether Ariosa has a complete defense to Illumina's patent infringement claim—as well as a claim for breach of the Agreement—because Ariosa possesses an express or implied license is plainly a dispute relating to infringement of the '794 patent. Illumina would have this Court read the words "disputes relating to" right out of the arbitration provision. Yet it is impermissible to ignore these words as a matter of basic contract interpretation, under which a court must give effect to every word in an agreement and not render words or phrases surplusage.

Second, although it does not offer an alternative meaning, Illumina contends that the term "relating to" should not be given the ordinary meaning ascribed to it by the District Court and, accordingly, Ariosa's Counterclaims do not "relate to" issues of patent infringement. Both contentions are without merit. Numerous cases support the District Court's interpretation of the term "relating to." Moreover, Ariosa's Counterclaims do not relate to patent infringement in a "loose sense," Br.

at 7, but instead are inextricably linked to questions of patent infringement, as there *can be no infringement under the Patent Act* if Ariosa enjoys the express or implied license to the '794 patent that its Counterclaims allege. This is further demonstrated by the fact that those Counterclaims are premised on the same factual basis that supports Ariosa's license and estoppel defenses, which Illumina concedes are properly litigated, as opposed to arbitrated. Indeed, it is Illumina's infringement allegations that give rise to both Ariosa's defenses and its Counterclaims.

Finally, Illumina briefly repeats its argument that the District Court failed to apply the "policy in favor of arbitration." However, as noted, that policy does not apply unless the scope of the parties' arbitration agreement is ambiguous or, alternatively, if the presumption of arbitrability is rebutted. Here, there is no ambiguity: The parties clearly agreed to exclude from arbitration "disputes relating to," *inter alia*, issues of patent infringement. Moreover, even if there were an ambiguity, Ariosa presented evidence to the District Court rebutting any suggestion that its Counterclaims should be arbitrated, rather than litigated with the claims of infringement of the very patent to which they relate.

As explained in detail below, Illumina's arguments are without merit and the District Court's order should be affirmed.

## **ARGUMENT**

## I.    THE DISTRICT COURT CORRECTLY FOUND THAT ARIOSA'S COUNTERCLAIMS ARE NOT SUBJECT TO ARBITRATION

### A.    Arbitration Requires Party Agreement and no "Policy in Favor of Arbitration" Can Substitute for that Agreement

The "first principle that underscores all" of the Supreme Court's arbitration decisions is that "arbitration is strictly a matter of consent and thus is a way to resolve those disputes—*but only those disputes*—that the parties have agreed to submit to arbitration." *Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 299 (2010) (internal citation omitted). The Ninth Circuit recently noted that the Supreme Court has "emphasized" this first principle. *Goldman,* 747 F.3d at 741-42. Accordingly, it remains settled law that "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which [it] has not agreed so to submit." *AT & T Techs, Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 648 (1986) (internal quotation marks omitted).

Illumina suggests that, "[w]hen faced with a dispute over arbitrability, a district court's role is limited," Br. at 9, including because (i) the district court must "direct the parties to proceed to arbitration on issues to which an arbitration agreement has been signed," and (ii) because there "is generally a liberal federal policy favoring arbitration agreements." Br. at 10. But Illumina misstates the standard and, indeed, glosses over the threshold determination that the district

court must make. Specifically, where there is a valid arbitration agreement, "it is the court's duty to interpret" that agreement and "to determine whether the parties intended to arbitrate grievances concerning a particular matter." *Granite Rock*, 561 U.S. at 301 (internal quotation marks omitted). Although courts "apply general state-law principles of contract interpretation" in doing so, as well as give "due regard to the federal policy in favor of arbitration by resolving ambiguities as to the scope of arbitration in favor of arbitration," *Goldman*, 747 F.3d at 742, courts do not "apply the so called 'presumption in favor of arbitrability' in every case." *Id*.

Rather, that presumption "does not apply if contractual language is plain that arbitration of a particular controversy is not within the scope of the arbitration provision." *Mundi v. Union Sec. Life Ins. Co.*, 555 F.3d 1042, 1044-45 (9th Cir. 2009) (internal quotation marks omitted); *Goldman*, 747 F.3d at 742. It applies "only where the scope of the agreement is ambiguous as to the dispute at hand." *Goldman*, 747 F.3d at 742. And, even if the language is ambiguous to the dispute at hand, courts "adhere to the presumption and order arbitration only where the presumption is not rebutted." *Id*. The Supreme Court has been clear: Courts "discharge [their] duty by: (1) applying the presumption of arbitrability only where a validly formed and enforceable arbitration agreement is ambiguous about whether it covers the dispute at hand; and (2) adhering to the presumption and

ordering arbitration only where the presumption is not rebutted." *Granite Rock*, 561 U.S. at 301.

The cases that Illumina cites do not hold differently. For example, Illumina repeats the oft-quoted language from *AT&T* that "[a]n order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *AT&T*, 475 U.S. at 650. This language simply means that the "presumption in favor of arbitrability applies only where the scope of the agreement is ambiguous as to the dispute at hand." *Goldman*, 747 F.3d at 742 (citing *AT&T*); *see also First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 943 (1995) ("[A]rbitration is simply a matter of contract between the parties; it is a way to resolve those disputes—but only those disputes—that the parties have agreed to submit to arbitration.").

Accordingly, despite Illumina's concentration on the "federal policy favoring arbitration agreements," nothing about that "policy" permits a departure from the established framework under which "a court may order arbitration of a particular dispute only where the court is satisfied that the parties agreed to arbitrate *that dispute*." *Granite Rock*, 561 U.S. at 297. Instead, the presumption of arbitrability "simply assists in resolving arbitrability disputes within that framework," *i.e.*, if an unrebutted ambiguity exists regarding the parties'

agreement. *Id*. at 302. And, as the District Court in this case correctly noted (JA0004), that "'policy' is merely an acknowledgment of the FAA's commitment to overrule the judiciary's longstanding refusal to enforce agreements to arbitrate and to place such agreements upon the same footing as other contracts." *Id*. at 302 (internal quotation marks omitted). The Supreme Court has "never held that this policy overrides the principle that a court may submit to arbitration only those disputes that the parties have agreed to submit" and has never "held that courts may use policy considerations as a substitute for party agreement." *Id*. at 303 (internal quotation marks omitted); *Goldman*, 747 F.3d at 742; *see also* JA0004.

Here, the District Court analyzed the parties' agreement and concluded that Ariosa's Counterclaims "*unambiguously* relate to issues of patent infringement" and thus "are outside the scope of the arbitration clause." JA0006 (emphasis added). That conclusion should be affirmed.

### B.    Ariosa's Counterclaims are Excluded from Arbitration Under the Plain Language of the Dispute Resolution Provision

As the District Court correctly concluded, Ariosa's Counterclaims are not subject to arbitration under the plain language of the Agreement's dispute resolution provision. The pertinent language of that provision is as follows:

> Subject to the terms and conditions of this Section 31(c), any dispute, claim or controversy arising out of or relating to the breach, termination, enforcement, interpretation or validity of this Agreement, shall be determined by arbitration.... <u>This Section 31(c) shall not apply</u>

to, and no arbitration shall resolve, disputes relating to issues of scope, infringement, validity and/or enforceability of any Intellectual Property Rights.

JA0422, § 31(c) (emphasis added). Through this provision, the parties agreed to arbitrate many potential disputes. However, in the exception underlined above, the parties did not agree to arbitrate—and expressly agreed that "no arbitration shall resolve"—"*disputes relating to* issues of scope, infringement, validity and/or enforceability of any Intellectual Property Rights." *Id.* (emphasis added). "Intellectual Property Rights" is defined to include Core IP Rights in Goods and Illumina Secondary IP Rights in Goods, JA0406-07, the exact intellectual property rights to which Ariosa contends it is licensed and thus cannot infringe. Accordingly, because Ariosa's Counterclaims present a dispute "relating to issues of scope, infringement, validity and/or enforceability of any Intellectual Property Rights," those counterclaims cannot be arbitrated. *E.g.*, *AT&T*, 475 U.S. at 648 ("[A]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which [it] has not agreed so to submit.").

Illumina characterizes the contractual exception as "narrow," Br. at 11, and argues that the parties only intended it to cover "specified," "patent-specific questions." *Id.* at 15. This argument is without merit.

First, Illumina asks the Court to accept a "plain reading of the arbitration exception" that *reads out* of the parties' Agreement the critical phrase "disputes

relating to." Br. at 14-15. Without any support—the argument is devoid of any citations to the record—Illumina claims that the parties included the exception to "their broad commitment to arbitration of contract disputes because they did not want an arbitrator to resolve issues *of* patent 'scope, infringement, validity and/or enforceability.'" Br. at 15 (emphasis added). That is not what the contract says. Rather, the parties agreed not to arbitrate any "***disputes relating to*** issues of scope, infringement, validity and/or enforceability of any Intellectual Property Rights." JA0422, § 31(c) (emphasis added). Although Illumina contends that the District Court erred by giving "relating to" a broad meaning, Br. at 13-14, Illumina would give it no meaning; Illumina's interpretation simply ignores the phrase (as exemplified by the above-quoted sentence from its Opening Brief). But the phrase *must be given* meaning and cannot be ignored. *See, e.g.*, Cal. Civ. Code § 1641 ("The whole of a contract is to be taken together, so as to give effect to every part, if reasonably practicable, each clause helping to interpret the other."); *see also Nat'l City Police Officers' Ass'n v. City of Nat'l City*, 87 Cal. App. 4th 1274, 1279 (2001) ("If possible, the court should give effect to every provision."). The District Court did no more than give the words "disputes relating to" their plain and ordinary meaning.

Similarly, and once again citing to absolutely nothing, Illumina argues that:

"The use of the phrase 'relating to' was intended to encompass related issues implicating patent-specific questions such as claim scope,

infringement, validity, and enforceability. [The parties] wanted to provide that an arbitrator would not resolve these specified issues."

Br. at 15. But the "patent-specific questions" that Illumina recites are the *exact issues* modified by the phrase "disputes relating to" in the contract itself. JA0422, § 31(c) ("disputes relating to issues of scope, infringement, validity and/or enforceability"). And the phrase "disputes relating to" cannot mean only the "specified issues" listed; it must mean *more* than the terms it modifies, lest it have no meaning at all. *E.g.*, *Nat'l City Police Officers' Ass'n*, 87 Cal. App. 4th at 1279 ("An interpretation which renders part of the instrument to be surplusage should be avoided."). Put simply, the parties did not agree to exclude from arbitration only the "specific issues" listed, but instead intended to exclude all "disputes relating to" those issues. The District Court correctly concluded that a "dispute relating to" whether Ariosa has an express or implied license to the '794 patent—a complete defense to patent infringement recognized by the Patent Act—falls within the exclusion to the parties' arbitration agreement.

Second, Illumina's argument that the term "relating to" should not be given the "broad common-sense meaning" the District Court ascribed to it is similarly without merit. *Cf.* Br. at 13-14. As an initial matter, the District Court's interpretation of "relating to," which appears in a footnote, does not appear to have made a difference in how the District Court reached its conclusion. The District Court found the language to be clear on its face: "whether an accused infringer has

been granted an express or implied license is an issue that *directly relates* to whether a patent has been infringed." JA0005-06 (emphasis added). In short, the District Court found that the central issue in Ariosa's Counterclaims—whether Ariosa has an express or implied license to the '794 patent—"directly relates" to Illumina's claim for infringement of the '794 patent. No expansive reading of "relating to" was required for the District Court's decision.

In any event, the District Court correctly interpreted Supreme Court jurisprudence establishing that the term "relate to" has a "broad common-sense meaning" and, "in the normal sense of the phrase, means to have a connection with or reference to." JA0005 n.3 (quoting *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 47 (1987); *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 97 (1983) (citing Black's Law Dictionary 1158 (5th ed. 1979) ("Relate. To stand in some relation; to have bearing or concern; to pertain; refer; to bring into association with or connection with"))) (internal quotation marks omitted); *see also Metro. Life Ins. Co. v. Massachusetts*, 471 U.S. 724, 739 (1985) (same). Ariosa's allegation that Illumina breached the Agreement by suing Ariosa for infringement of the '794 patent certainly "relates to," *inter alia*, issues of "infringement . . . of any Intellectual Property Rights."

Illumina's attempt to distinguish these cases on the grounds that they are limited to the ERISA context is without legal support. For example, *outside* of the

ERISA context, the Supreme Court has held that the "ordinary meaning" of the words "relating to" is a broad one—"to stand in some relation; to have bearing or concern; to pertain; refer; to bring into association with or connection with." *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 383 (1992); *see also Barnett Bank of Marion Cnty., N.A. v. Nelson*, 517 U.S. 25, 38 (1996) ("In ordinary English, a statute that says that banks may act as insurance agents, and that the Comptroller of the Currency may regulate their insurance-related activities, 'relates' to the insurance business. The word 'relates' is highly general."); *accord Harkonen v. Sebelius*, No. C 13-0071 PJH, 2013 WL 5734918, at *7 (N.D. Cal. Oct. 22, 2013) (holding that "the phrases 'in connection with,' 'in relation to,' or 'related to' are generally interpreted expansively").

California state courts concur. *E.g.*, *Bay Cities Paving & Grading, Inc. v. Lawyers' Mut. Ins. Co.*, 5 Cal. 4th 854, 868 (1993) ("'Related' is a commonly used word with a broad meaning that encompasses a myriad of relationships. For example, a leading legal dictionary defines 'related' to mean 'standing in relation; connected; allied; akin.'") (citing Black's Law Dictionary 1288 (6th ed. 1990)); *In re Jorge G.*, 117 Cal. App. 4th 931, 941 (2004) (same).

Accordingly, Illumina is incorrect that the term "relating to" only has a broad common sense meaning in specific contexts. Under California law, "[t]he words of a contract are to be understood in their ordinary and popular sense." Cal.

Civ. Code § 1644. And, under established precedent, the ordinary meaning of the term "relating to" is the "broad common-sense meaning" the District Court endorsed. *E.g.*, *Morales*, 504 U.S. at 383. Therefore, under California principles of contract interpretation, the parties' agreement to exclude from arbitration "***disputes relating to*** issues of scope, infringement, validity and/or enforceability of any Intellectual Property Rights," JA0422, § 31(c) (emphasis added), must be interpreted broadly to include any disputes that, at a minimum, "have a connection with or reference to" issues of patent infringement. JA0005 n.5 (internal quotation marks omitted); *see Morales*, 504 U.S. at 383.[4]

Here, Ariosa's Counterclaims "unambiguously relate to issues of patent infringement." JA0006. Illumina repeatedly attempts to characterize the issues raised by those counterclaims as limited to "licensing" or as "contract disputes" related to the "appropriate interpretation of the agreement—including what licenses were conveyed." *E.g.*, Br. at 11-12. That is not an accurate characterization. Rather, the underlying factual allegations addressed in Ariosa's

---

[4] Illumina suggests that the term "relating to" must be read more narrowly on account of "the strong federal policy in favor of arbitration." Br. at 15. This misstates the law. The "policy" in favor of arbitration is not a tool with which to determine the meaning of a particular word and cannot itself create ambiguity. Rather, it is only applicable, if at all, *after* the court determines that an ambiguity exists as to whether a particular dispute is subject to arbitration. *E.g.*, *Mundi*, 555 F.3d at 1044-45 (presumption in favor of arbitration "does not apply if contractual language is plain that arbitration of a particular controversy is not within the scope of the arbitration provision"); *Goldman*, 747 F.3d at 742 (presumption applies "only where the scope of the agreement is ambiguous as to the dispute at hand").

Counterclaims center on Illumina's *infringement* allegations against Ariosa based on the '794 patent—which Ariosa alleges has either been licensed under the Agreement or falls within the representation and warranty that no license is required under the Agreement.[5]

As such, the issues relating to Illumina's claim that Ariosa infringes the '794 patent are inextricably linked to the question of whether Ariosa was granted by Illumina, and continues to enjoy, an express or implied license to that patent. The two cannot be decoupled, as a license is a complete defense to allegations of patent infringement. *E.g.*, *MedImmune, Inc. v. Centocor, Inc.*, 409 F.3d 1376, 1379 (Fed. Cir. 2005), *cert. granted, judgment vacated on other grounds*, 549 U.S. 1163 (2007) ("[A] license is, by its nature, an agreement not to litigate. A licensor agrees to receive royalties or other consideration from the licensee in exchange for a covenant not to sue or disturb the licensee's activities."); *Anton/Bauer, Inc. v. PAG, Ltd.*, 329 F.3d 1343, 1350 (Fed. Cir. 2003) ("[I]t is well settled that all or part of a patentee's right to exclude others from making, using, or selling a patented invention may be waived by granting a license, which may be express or implied."); *McCoy v. Mitsuboshi Cutlery, Inc.*, 67 F.3d 917, 920 (Fed. Cir. 1995)

---

[5] *Zoran Corp. v. DTS, Inc.*, No. C 08-4655 JF (HRL), 2009 WL 160238, at *2 (N.D. Cal. Jan. 20, 2009) ("A court's task is to look past the labels the parties attach to their claims to the underlying factual allegations and [to] determine whether they fall within the scope of the arbitration clause.") (internal quotation marks omitted).

("[A] patent or trademark owner may contract to confer a license on another party…. A licensee, of course, has an affirmative defense to a claim of patent infringement.").

As a result, the viability of Illumina's patent infringement action depends on the scope of the license granted to Ariosa pursuant to the Agreement. These precise issues will be litigated in the District Court action that Illumina initiated. For example, Illumina claims that the Goods "Illumina supplies to Ariosa under the [Agreement] do not include the type of proprietary custom DNA assay optimization kits and techniques that are the subject matter of the '794 patent." Br. at 4. As such, Illumina suggests that the sale of those Goods was not accompanied by a license to Illumina "Core IP Rights" or "Secondary IP Rights." Ariosa disagrees on numerous substantive grounds, but determining whether or not Illumina is correct—and thus whether or not this affects the rights to which Ariosa is licensed—requires a technical analysis of the "subject matter of the '794 patent," *i.e.*, technical issues surrounding the scope of the '794 patent that will be litigated in connection with Illumina's claim of infringement. Therefore, under any interpretation of the phrase "relating to," Illumina's contention that the Goods it supplied to Ariosa were not accompanied by a license to the '794 patent is unquestionably entwined with Illumina's patent infringement claim in this case: If Ariosa has a license to the '794 patent (or an enforceable representation and

warranty that no license is required)—which Illumina concedes will require a technical analysis of its patent—then (i) Ariosa cannot be held liable for infringement of that patent and (ii) Illumina's filing of its infringement action was a breach of the Agreement.

Accordingly, Illumina is incorrect to characterize Ariosa's Counterclaims as merely about "licensing" or whether Ariosa has a "right to a license." *E.g.*, Br. at 15-16. Ariosa's Counterclaims are not about "licensing" in the abstract, but are centered on whether Ariosa is licensed to—and thus is immunized from an infringement lawsuit concerning—the very patent Illumina has asserted against it. Similarly, Illumina is also incorrect to suggest that the Counterclaims have nothing to do with whether "Ariosa infringes the patents." Br. at 20. To the contrary, as explained above, the Counterclaims are inextricably linked to questions of patent infringement, as there *can be no* infringement if Ariosa enjoys the express or implied license to the '794 patent that its Counterclaims allege.

In this regard, Ariosa's Counterclaims go hand-in-hand with its defenses of express license, implied license, and estoppel. JA0094-95. Those defenses share the same underlying factual allegations as Ariosa's Counterclaims, and Illumina does not deny that those defenses are properly litigated in this action. The same must be true of Ariosa's Counterclaims. For example, determining whether those defenses to patent infringement are viable—*i.e.*, whether Ariosa is licensed to the

'794 patent or whether Illumina is otherwise barred from asserting that patent against Ariosa—will require an analysis of the very issues that underlie Ariosa's Counterclaims. It follows, therefore, that those factual allegations involve "disputes relating to" issues of infringement such that they are excluded from the parties' arbitration agreement. *See, e.g.*, *Illinois Tool Works, Inc. v. MOC Products Co. Inc.*, No. 09CV1887 JLS AJB, 2010 WL 4314296, at *3 (S.D. Cal. Oct. 26, 2010) (stating that "contract claims are often litigated with patent infringement claims" and allowing "breach of contract claims [that] are factually related to" existing defenses). And it makes no sense to arbitrate these same issues in connection with Ariosa's Counterclaims while the parties litigate them before the District Court.

Finally, Illumina suggests that applying the "broad common sense meaning" of "relating to" dictated by ordinary meaning and case law would lead to situations in which other cases, such as "any claim to an intellectual property license" or a "failure to pay" or "failure to supply," would be captured by the exception in the parties' dispute resolution provision. Br. at 15-16. Ariosa has never proposed any such interpretation of the parties' arbitration agreement. And Ariosa's position in this case does not demand the results that Illumina describes. The present question is limited solely to whether "the parties intended to arbitrate grievances concerning a particular matter," *i.e.*, whether they intended to arbitrate the matter currently

before the Court. *Granite Rock*, 561 U.S. at 301 (internal quotations omitted). The answer is no: As Illumina concedes, the parties "specifically listed the issues they did not want the arbitrator to resolve," Br. at 16, and included in that list were "*disputes relating to* issues of scope, infringement, validity and/or enforceability of any Intellectual Property Rights." JA0422, § 31(c) (emphasis added). As explained above and as determined by the District Court, Ariosa's Counterclaims in this case unambiguously fall within this exception to arbitration.

### C.   The District Court Properly Did Not Apply Any "Policy In Favor of Arbitration"

Illumina briefly contends that the District Court failed to resolve a purported ambiguity in the parties' agreement in favor of arbitration. Br. at 17-18. However, Illumina's entire argument depends on the existence of an ambiguity, without which the "presumption" or "policy" in favor of arbitration does not apply. *E.g.*, *Mundi*, 555 F.3d at 1044-45 (presumption in favor of arbitration "does not apply if contractual language is plain that arbitration of a particular controversy is not within the scope of the arbitration provision"); *Goldman*, 747 F.3d at 742 (presumption applies "only where the scope of the agreement is ambiguous as to the dispute at hand"); *see also Granite Rock*, 561 U.S. at 302 (reiterating that the Supreme Court has "never held that this policy overrides the principle that a court may submit to arbitration only those disputes that the parties have agreed to

submit" and has never "held that courts may use policy considerations as a substitute for party agreement") (internal quotation marks omitted).

There is no ambiguity in this case. And Illumina has not identified one. Rather, Illumina merely disagrees with the District Court's interpretation and claims that the "very most that can be said is that the arbitration provision and exception are susceptible to two different interpretations of the term 'relating to.'" Br. at 17. But a term in a contract "does not become ambiguous merely because the parties disagree about its meaning." *MacKinnon v. Truck Ins. Exch.*, 31 Cal. 4th 635, 647 (2003), *as modified on denial of reh'g* (Sept. 17, 2003). Moreover, "[m]ultiple or broad meanings do not necessarily create ambiguity." *Bay Cities Paving & Grading, Inc.*, 5 Cal. 4th at 868, 873 (holding that "'[r]elated' is a broad word, but it is not therefore a necessarily ambiguous word"). And courts "will not adopt a strained or absurd interpretation in order to create an ambiguity where none exists." *Id.* at 867.

Here, although Illumina suggests that there are "two different reasonable interpretations" of the term "relating to," it has not offered any alternative interpretation, let alone a reasonable one. *Cf.* Br. at 14-15. And "language in a contract must be construed in the context of that instrument as a whole, and in the circumstances of that case, and cannot be found to be ambiguous in the abstract." *Bay Cities Paving & Grading, Inc.*, 5 Cal. 4th at 867. As discussed above, Illumina

presents no case-specific argument as to why the term "relating to" has a meaning other than the "broad common-sense meaning" the District Court ascribed to it. Rather, Illumina's only argument is that the term "relating to" should be *read out* of the Agreement. This the Court cannot do. And the District Court's interpretation of "relating to" is squarely aligned with the holdings of many Supreme Court and California cases. Part I.B, *supra*. That interpretation should not be disturbed. *See Zoran*, 2009 WL 160238, at *6 (denying motion to compel arbitration because "the Court declines to manufacture doubt or to retreat behind the presumption of arbitrability and thereby ignore the unmistakable limits of the subject clause").

In any event, even if Illumina could identify an ambiguity in the term "relating to" as applied to *this case*, courts "adhere to the presumption and order arbitration only where the presumption is not rebutted." *Goldman*, 747 F.3d at 742. Here, Ariosa presented extensive evidence to the District Court demonstrating that its Counterclaims center on Illumina's assertion of the '794 patent—which Ariosa alleges has either been licensed under the Agreement or falls within the representation and warranty that no license is required under the Agreement. JA0355-62. Ariosa also presented extensive evidence and argument demonstrating that such a license *precludes* a finding of infringement of the '794 patent, a patent that issued seven months before the Agreement was signed but that Illumina failed

to raise, let alone assert, for years after executing the Agreement and licensing Ariosa to operate the Harmony® Prenatal Test. *Id.*

Therefore, even if Illumina could identify a case-specific ambiguity in the term "relating to," which it has not done, Ariosa has rebutted any presumption that its Counterclaims should be arbitrated. Indeed, those Counterclaims must be said to "relate to" "issues of scope, infringement, validity and/or enforceability" of the Illumina intellectual property rights asserted in this case—the very rights to which Ariosa contends it is licensed. JA0422, § 31(c). Accordingly, the District Court's order denying arbitration should be affirmed.

## **<u>CONCLUSION</u>**

For the reasons set forth herein and the accompanying record, this Court should affirm the District Court's August 7, 2014 Order denying Illumina's motion to dismiss Ariosa's counterclaims for breach of contract and breach of the implied covenant of good faith and fair dealing under the dispute resolution provision of the parties' agreement.

Dated:  February 4, 2015                    Respectfully submitted,

                                            _/s/ David I. Gindler_
                                            David I. Gindler
                                            IRELL & MANELLA LLP
                                            1800 Avenue of the Stars, Suite 900
                                            Los Angeles, California 90067-4276
                                            Tel. (310) 277-1010

                                            *Attorneys for Defendant-Appellee*
                                            *Ariosa Diagnostics, Inc.*

## CERTIFICATE OF SERVICE

I, David Gindler, certify that on February 4, 2015, a copy of the **RESPONSIVE BRIEF OF DEFENDANT-APPELLEE ARIOSA DIAGNOSTICS, INC.** was served upon the following in the manner indicated:

**VIA ECF & EMAIL**

Edward R. Reines
edward.reines@weil.com
WEIL, GOTSHAL & MANGES LLP
201 Redwood Shores Parkway
Redwood Shores, CA 94065

Derek C. Walter
derek.walter@weil.com
WEIL, GOTSHAL & MANGES LLP
201 Redwood Shores Parkway
Redwood Shores, CA 94065

Audrey Maness
audrey.maness@weil.com
WEIL, GOTSHAL & MANGES LLP
700 Louisiana, Suite 1700
Houston, TX 77002

Michele A. Gauger
michele.gauger@weil.com
WEIL, GOTSHAL & MANGES LLP
201 Redwood Shores Parkway
Redwood Shores, CA 94065

Anant N. Pradhan
anant.pradhan@weil.com
WEIL, GOTSHAL & MANGES LLP
201 Redwood Shores Parkway
Redwood Shores, CA 94065

Dated:  February 4, 2015

_/s/ David I. Gindler_
David I. Gindler

## **CERTIFICATE OF COMPLIANCE WITH RULE 32(a)**

1.     This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B). The brief contains 7,851 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(a)(7)(B)(iii) and Federal Circuit Rule 32(b).

2.     This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6). The brief has been prepared in a proportionally spaced typeface using Microsoft Word 2010 in 14-point Times New Roman font.


Dated:  February 4, 2015                    */s/ David I. Gindler*
                                              David I. Gindler