**Weil, Gotshal & Manges LLP**

201 Redwood Shores Parkway
Redwood Shores, CA 94065-1134
+1 650 802 3000 tel
+1 650 802 3100 fax

**Edward R. Reines**
+1 (650) 802-3022
edward.reines@weil.com

June 12, 2015

Daniel E. O'Toole
Clerk of the Court
United States Court of Appeals for the Federal Circuit
717 Madison Place, N.W.
Washington, D.C. 20439

**Re: *Illumina, Inc. v. Ariosa Diagnostics, Inc.*, Case No. 14-1815**

Dear Mr. O'Toole,

I write in response to the Court's order requesting supplemental letter briefing on the jurisdictional issues raised during the June 5, 2015 oral argument in the above-referenced appeal.

During the oral argument, the Court raised two jurisdictional issues. First, the Court raised the issue of whether the district court's order was appealable pursuant to 9 U.S.C. § 16. Second, assuming the district court's order was indeed appealable, the Court raised the issue of whether the appeal should go to the Federal Circuit or the regional circuit. As documented below, the district court's order was appealable and is properly before this Court.

## *The District Court's Order Was Appealable*

Pursuant to 9 U.S.C. § 16(a)(1)(B), appellate courts have jurisdiction to hear an immediate appeal of an order "denying a petition under section 4 of this title to order arbitration to proceed." At oral argument, the Court questioned whether the district court's order denying Illumina's motion to dismiss Ariosa's contract counterclaims fell within the scope of this statute. Pointing to *Bombardier Corp. v. Nat'l R.R. Passenger Corp.*, 333 F.3d 250, 254 (D.C. Cir. 2003), the Court raised the question of whether appellate jurisdiction might not lie under a formalistic approach because Illumina's motion was styled as a motion to dismiss rather than a motion to compel arbitration. At

Daniel E. O'Toole
June 12, 2015
Page 2

**Weil, Gotshal & Manges LLP**

oral argument, Ariosa took the position that numerous circuit courts would have found that the district court's order was not immediately appealable.  *See* Oral Argument Recording, Appeal No. 2014-1815, *Illumina, Inc. v. Ariosa Diagnostics, Inc.* (June 5, 2015), http://oralarguments.cafc.uscourts.gov/default.aspx?fl=2014-1815.mp3 at 21:45-55 ("**MR. GINDLER:** Five circuits have directly addressed this question.  Four of them have come out finding that this order would not be appealable.").  Ariosa does not accurately characterize the law.  In fact, the law from circuit courts across the country makes clear that Illumina's motion is of precisely the type that is immediately appealable.

There is actually little difference in the relevant law from circuit to circuit.  The circuit courts that have considered this issue agree that the substance—not the form—of Illumina's motion is what matters for the purpose of assessing jurisdiction pursuant to 9 U.S.C. § 16.  The fact that Illumina's motion was not styled as a motion to compel arbitration or did not expressly refer to 9 U.S.C. § 4 thus does not defeat jurisdiction. *See, e.g.*, *Rota-McLarty v. Santander Consumer USA, Inc.*, 700 F.3d 690, 698 (4th Cir. 2012) ("Consonant with the approach taken by our sister circuits, *Wheeling* held that the proper inquiry focuses on substance rather than nomenclature."); *Conrad v. Phone Directories Co.*, 585 F.3d 1376, 1385 (10th Cir. 2009)  ("If a motion denied by the district court is not explicitly styled as a motion under the FAA, or the court suspects that the motion has been mis-captioned in an attempt to take advantage of § 16(a), the court must look beyond the caption to the essential attributes of the motion itself."); *Sourcing Unlimited, Inc. v. Asimco Int'l, Inc.*, 526 F.3d 38, 46 (1st Cir. 2008) ("Jumpsource argues that jurisdiction is not proper under § 16(a)(1)(C) because defendants sought dismissal of the case rather than labeling their motion as one 'under section 206...to compel arbitration.' 9 U.S.C. §  16(a)(1)(C). This elevates a label over substance.").  At oral argument, Ariosa agreed that the substance—not the form—of Illumina's motion is what mattered.  *See* Oral Argument Recording at 21:05-15 (**MR. GINDLER:** "I agree that the substance matters.  Right?  In other words, it's not the magic of saying § 9, title 9 § 16.").

Thus, the general rule is that if "the essence of the movant's request is that the issues presented be decided exclusively by an arbitrator and not by any court, then the denial of that motion may be appealed under § 16(a)."  *Conrad*, 585 F.3d at 1386.  "The goal of this inquiry is to determine whether it is plainly apparent from the four corners of the motion that the movant seeks only the relief provided for in the FAA, rather than any other judicially-provided remedy."  *Id.* at 1385; *see also Wheeling Hosp., Inc. v. Health*

Daniel E. O'Toole
June 12, 2015
Page 3

**Weil, Gotshal & Manges LLP**

*Plan of the Upper Ohio Valley, Inc.*, 683 F.3d 577, 586 (4th Cir. 2012) ("we must determine whether The Health Plan made it clear within the four corners of its motion to dismiss that it was seeking enforcement of the arbitration agreement").

Here, it is clear from Illumina's motion that Illumina is invoking the arbitration provision of the party's supply agreement to force arbitration. Illumina's briefing in support of its motion repeatedly makes clear that the essence of its motion is that the issue presented must be decided exclusively by an arbitrator, and not the district court:

- "Thus, to the extent Ariosa seeks to raise claims for breach of the Supply Agreement, it must do so in arbitration, not in federal district court." JA116.

- "Ariosa's breach of contract claim clearly falls within the broad arbitration clause of the Supply Agreement here, and is therefore subject to arbitration, not district court litigation." JA121.

- "This claim clearly 'arises out of or relates to' the contract, and is therefore also subject to arbitration under § 31(c) of the Supply Agreement. The law is clear: Ariosa's claims for breach have no place in this Court." JA122.

- "The issues presented in Illumina's motion are simple: Because the contract that Illumina allegedly breached includes an arbitration provision, Ariosa's breach of contract counterclaims must be arbitrated." Exh. A [Reply] at 1.

- "Thus, even if Ariosa manufactures some doubt as to whether the arbitration clause in the supply agreement covers Ariosa's breach of contract claims, the Court must still order arbitration. Here, there is not even a doubt, as the supply agreement unambiguously requires that Ariosa's breach of contract claims be arbitrated." *Id.* at 2.

- "As such, [Ariosa's counterclaims] are subject to arbitration, not district court litigation." *Id.* at 4.

- "Thus, applying the liberal policy favoring arbitration, the Court must resolve all doubts about which clause of the supply agreement should be read more broadly in favor of arbitration—not against arbitration." *Id.* at 5.

Daniel E. O'Toole
June 12, 2015
Page 4

**Weil, Gotshal & Manges LLP**

Consistent with the foregoing, Illumina's briefing relied extensively upon Supreme Court and Ninth Circuit precedent espousing the strong Federal policy favoring arbitration. *See id.* at 2, 4-6; JA120-21.

In its order, the district court noted that although "arbitration agreements are typically enforced through a motion to compel arbitration and a request to stay the proceedings pursuant to 9 U.S.C. § 3, they may also be enforced through a motion to dismiss." JA3 n.1. Likewise, in deciding Illumina's motion, the district court analyzed Supreme Court law regarding the FAA and its underlying policy goals. *See, e.g.*, JA4. Thus, the district court clearly understood Illumina's motion as an attempt to force arbitration. Where, as here, the district court and parties recognize that the movant is seeking to enforce an arbitration agreement, the resulting order is immediately appealable. *See, e.g.*, *Sourcing Unlimited*, 526 F.3d at 46 ("[E]veryone, including the district court, viewed this motion as one seeking to compel arbitration, and defendants argued that if arbitration was compelled, the case should be dismissed. A movant's choice to request dismissal rather than a stay of proceedings during referral to arbitration is within the ambit of § 16(a)."); *Fit Tech, Inc. v. Bally Total Fitness Holding Corp.*, 374 F.3d 1, 6 (1st Cir. 2004) ("Bally clearly is invoking the accountant dispute resolution remedy, even if a stay rather than dismissal ensues. Since no one has been prejudicially misled by Bally's request for an over-favorable remedy of dismissal, its request for dismissal in favor of the accountant remedy can be treated as encompassing the lesser alternative remedy of a stay and reference.").

The *Bombardier* decision is consistent with the legal principles documented above and does not call for dismissal of this appeal. Unlike Illumina, the movant in *Bombardier* was seeking to preclude any further resolution of the issues, whether through arbitration or otherwise. In *Bombardier*, the motion at issue "exhibited no intent to pursue arbitration—indeed, it sought outright dismissal with no guarantee of future arbitration." *Bombardier*, 333 F.3d at 254. In fact, the motion in *Bombardier*, never even mentioned arbitration. *Id.* ("Amtrak repeatedly referred to the contractually provided procedures, but never as arbitration.… Neither did it suggest that the procedures were covered by the FAA. Therefore, we decline to 'treat' Amtrak's motion as anything other than what it was—a motion for dismissal under 12(b)(6)."). Accordingly, the *Bombardier* Court held that the district court order was not appealable pursuant to 9 U.S.C. § 16.

Daniel E. O'Toole
June 12, 2015
Page 5

**Weil, Gotshal & Manges LLP**

As multiple circuit courts have recognized, however, *Bombardier* did not broadly hold that a motion to dismiss may not ever be appealed immediately. *See, e.g.*, *Wheeling*, 683 F.3d at 586 n.2 (4th Cir. 2012) ("Even the D.C. Circuit, which has focused on the plain language of § 16(a) and construed the provision narrowly, has nevertheless acknowledged that it may construe a motion to dismiss more broadly in some circumstances, particularly if it were based on the FAA's requirement that arbitration agreements be strictly enforced."). *Bombardier* was simply a case where the Court declined to exercise jurisdiction because the unique facts made clear that the movant was not seeking to invoke arbitration. *See Fit Tech*, 374 F.3d at 6 n.2 (describing *Bombardier*, and explaining that the "aggravated facts made a difference" to the result). Where it is clear that the movant is seeking to preclude all resolution of a dispute rather than invoke arbitration, appellate jurisdiction may not lie. *See, e.g.*, *Wabtec Corp. v. Faiveley Transp. Malmo AB,* 525 F.3d 135, 140 (2d. Cir. 2008) ("Rather than affirmatively seek arbitration in accordance with the agreement, [movant's] motion focused on preventing [non-movant] from resolving any dispute in the courts, in accordance with the agreement's provision that disputes would be settled 'without recourse to the courts.'"). Here, however, Illumina's motion stated repeatedly that the proper place, if any, for Ariosa's contract counterclaims was arbitration. Illumina's motion thus cannot be characterized as the type of unappealable motion that was at issue in *Bombardier* or *Wabtec*.

Notably, prior to oral argument, Ariosa never raised any concerns as to whether the district court's order was appealable pursuant to 9 U.S.C. § 16. Such a contention would raise form over substance and would be inconsistent with the district court's decision, its own position in the district court, and circuit court law considering this issue. This case illustrates why it would be unreasonable to dismiss for lack of jurisdiction. If this Court dismisses this appeal, Illumina's likely response will be to file a new motion that is specifically captioned as a motion to compel arbitration and that specifically refers to 9 U.S.C. § 4. The arguments in support of the motion will be largely the same as those Illumina presented in its original motion, and the district court would presumably deny the motion for the same reasons it denied Illumina's original motion. The district court's order would undisputedly be immediately appealable, and the appellate briefing would likely raise arguments that parallel those in the briefs currently before the Court. Thus, dismissing this appeal would create nothing but delay and waste. This cannot be what was contemplated when Congress enacted 9 U.S.C. § 16.

Daniel E. O'Toole
June 12, 2015
Page 6

**Weil, Gotshal & Manges LLP**

## Illumina's Appeal Is Properly Before This Court

The second jurisdictional issue raised during the June 5 oral argument was whether this appeal should be heard by the Federal Circuit or the Ninth Circuit.  Importantly, this Court previously determined in *Microchip Tech. Inc. v. U.S. Philips Corp.*, 367 F.3d 1350 (Fed. Cir. 2004) that it does indeed have jurisdiction from decisions such as the one at issue here.  Having undertaken a thorough review of *Microchip* and related cases in response to the Court's June 1 letter, the parties agree that *Microchip* was correctly decided and that this Court—not the Ninth Circuit—should hear this appeal.  *See* Oral Argument Recording at 26:38-45 ("**THE COURT:** You both agree that if there is an appealable order it should come here, but you disagree about whether there is an appealable order?  **MR. GINDLER:** That is exactly correct.").

In *Microchip*, this Court considered its jurisdiction over an appeal of the denial of a motion to compel arbitration.  The Court first noted that an "order compelling arbitration is in effect a mandatory injunction" and that "[d]enial of a mandatory injunction is ordinarily appealable under section 1292(a)(1)."  *Id.* at 1354.  The Court further explained, however, that under Supreme Court precedent, it could exercise jurisdiction only over appeals of injunction denials that have "serious, perhaps irreparable, consequence."  *See id.* (citing *Gulfstream Aerospace Corp. v. Mayacamas Corp.*, 485 U.S. 271, 288 (1988) and *Carson v. Am. Brands, Inc.*, 450 U.S. 79, 85 (1981)).  In concluding that the denial of a motion to compel arbitration had such consequences, this Court wisely coupled 28 U.S.C. § 1292(a)(1) to 9 U.S.C. § 16:

> However, under the Supreme Court's decision in *Gulfstream*, an order that has "the practical effect of granting or denying [an] injunction[]" (such as an order compelling or refusing to compel arbitration) would only be appealable under section 1292(a)(1) if it had "serious, perhaps irreparable, consequence." Before the enactment of section 16, some regional circuits concluded that the denial of an order to compel arbitration did not have such consequences.  Congress however disagreed and, through the enactment of section 16, directed that orders denying such motions be appealable.

*Id.* at 1354-1355 (citations omitted).  Thus, the district court order was appealable under section 1292(a)(1), and this Court, rather than the regional circuit, had appellate

Daniel E. O'Toole
June 12, 2015
Page 7

jurisdiction pursuant to 28 U.S.C. § 1292(c)(1). As noted above, the parties agree that this rationale is correct.[1]

In its June 1 letter, the Court asked the parties to address whether the Eighth Circuit's decision in *Indus. Wire Prods., Inc. v. Costco Wholesale Corp.*, 576 F.3d 516 (8th Cir. 2009) called for a different conclusion. Illumina respectfully submits that *Indus. Wire* should not be followed. The holding in *Indus. Wire* was driven by the assertion that the *McLaughlin Gormley King Co. v. Terminix Int'l Co.*, 105 F.3d 1192, 1193 (8th Cir. 1997) case held that denials of motions to compel arbitration do not have an injunctive effect. *See id.* at 520. Unlike *Microchip*, the *Indus. Wire* decision decoupled 9 U.S.C. § 16 from 28 U.S.C. § 1292(a)(1). This creates a dual jurisdictional path in which a party can selectively appeal either to the regional circuit by invoking 1292(a)(1) directly or to this Court by invoking § 16. In this regard, *Indus. Wire* creates jurisdictional uncertainty and promotes forum shopping.

Furthermore, the *McLaughlin* decision cited in *Indus. Wire* did not even squarely address the issue of whether denial of a motion to compel arbitration had an injunctive effect. In fact, the *Indus. Wire* decision is at odds with Eight Circuit law which clearly holds that denial of a motion to compel arbitration has injunctive effect with irreparable consequences:

> This court has jurisdiction under § 1292(a)(1) over the district court's denial
> of NS's motion to compel arbitration. ***This order, like the order at issue in***

---

[1] Furthermore, this Court has since favorably applied *Microchip* and its rationale. *See, e.g.*, *Qualcomm Inc. v. Nokia Corp.*, 466 F.3d 1366, 1369-70 (Fed. Cir. 2006) (citing *Microchip* and explaining that because "the district court's jurisdiction was based on 28 U.S.C. § 1338, the district court's order is appealable under 28 U.S.C. § 1292(a)(1), and we have appellate jurisdiction pursuant to 28 U.S.C. § 1292(c)(1)."); *Competitive Techs., Inc. v. Fujitsu Ltd.*, 374 F.3d 1098, 1104 n.7 (Fed. Cir. 2004) (citing *Microchip* for its "holding that section 16 of the Federal Arbitration Act, 9 U.S.C. § 16 (2000), 'allows for appeal of orders denying motions to compel arbitration even when the issue of arbitrability has not been finally decided'").

Daniel E. O'Toole
June 12, 2015
Page 8

**Weil, Gotshal & Manges LLP**

> ***Kansas Gas & Elec. Co. v. Westinghouse Elec. Corp., has an injunctive
> effect, and carries with it the serious, perhaps irreparable consequences
> identified by the Fourth Circuit***. Because of these consequences, we find
> that a denial of a motion to compel arbitration can only be effectively
> challenged on immediate appeal because the advantages of arbitration will
> be forever lost if the appeal is delayed. Therefore, we have jurisdiction over
> the court's denial of NS's motion to compel arbitration pursuant to §
> 1292(a)(1).

*Nordin v. Nutri/Sys., Inc.*, 897 F.2d 339, 342 (8th Cir. 1990) (emphasis added).

Just a few months ago, the Eighth Circuit distinguished *McLaughlin* and reiterated its
holding from *Nordin*.  *See Conners v. Gusano's Chicago Style Pizzeria*, 779 F.3d 835,
839 (8th Cir. 2015) ("Like *Nordin*, the district court's order 'enjoining' the arbitration
agreement's enforcement as to current employees 'can only be effectively challenged on
immediate appeal because the advantages of arbitration will be forever lost if the appeal
is delayed' until the entry of a final judgment.").  Thus, the *Indus. Wire* decision is not
just amiss from a policy standpoint, but also appears to be an incorrect application of
Eight Circuit law.[2]

For the reasons stated above, this Court's decision to couple 28 U.S.C. § 1292(a)(1) and 9
U.S.C. § 16 was correct.  Yet, such coupling is not essential to establish jurisdiction over
this appeal.  Indeed, this Court has previously held that it has immediate jurisdiction over
an appeal of an order denying a stay pending arbitration ***without*** relying on 9 U.S.C. § 16.

---

[2] In *Microchip*, this Court further cited the Third Circuit case *Medtronic AVE, Inc. v.
Advanced Cardiovascular Sys., Inc.*, 247 F.3d 44, 52 (3d Cir. 2001) as an exemplary
decision holding that the instant appeal should go to the regional circuit.  *See Microchip*,
367 F.3d at 1355.  Like *Indus. Wire*, however, *Medtronic* relies upon *McLaughlin* without
any meaningful analysis as to whether denial of a motion to compel arbitration is
injunctive with irreparable harm.  The Federal Circuit did not previously follow
*Medtronic*, and there is no reason for it to do so now.

Daniel E. O'Toole
June 12, 2015
Page 9

**Weil, Gotshal & Manges LLP**

*See Rhone-Poulenc Specialites Chimiques v. SCM Corp.*, 769 F.2d 1569, 1571 (Fed. Cir. 1985).

As this Court noted in *Microchip*, other Courts have held independently of 9 U.S.C. § 16 that denials of motions to compel arbitration have injunctive effect with irreparable harm. *See Microchip*, 367 F.3d at 1355 n.4 (citing *Kansas Gas & Elec. Co. v. Westinghouse Elec. Corp.*, 861 F.2d 420, 422 (4th Cir. 1988)). The Eighth Circuit decisions in *Nordin* and *Conners* (cited above) are exemplary decisions consistent with this view.

Critically, the Ninth Circuit has ruled that an order such as the one at issue here is immediately appealable under § 1292(a) even leaving aside 9 U.S.C. § 16:

> In contrast, where an order grants a stay of arbitration, one party is deprived of the inexpensive and expeditious means by which the parties had agreed to resolve their disputes. If that party must undergo the expense and delay of a trial before being able to appeal, the advantages of arbitration—speed and economy—are lost forever. We find this consequence "serious, perhaps, irreparable" and "effectually challenged." The order staying arbitration is therefore appealable.

*Alascom, Inc. v. ITT North Elec. Co.*, 727 F. 2d 1419, 1422 (9th Cir. 1984) (citations omitted).

When orders denying motions to compel are viewed in this manner, they fall squarely within the jurisdictional grants of 28 U.S.C. §§ 1292(a)(1) and (c)(1). Thus, if this Court were to send this appeal to the Ninth Circuit on jurisdictional grounds, the Ninth Circuit should conclude pursuant to *Alascom* that it should be sent back to this Court. This Court should thus follow its prior decision in *Microchip* and conclude that it has jurisdiction to hear this appeal.

Respectfully submitted,

Edward R. Reines

# Exhibit A

| | |
|---|---|
| 1 | EDWARD R. REINES (Bar No. 135960)<br>edward.reines@weil.com |
| 2 | DEREK C. WALTER (Bar No. 246322)<br>derek.walter@weil.com |
| 3 | MICHELE A. GAUGER (Bar No. 281769)<br>michele.gauger@weil.com |
| 4 | ANANT N. PRADHAN (Bar No. 287227)<br>anant.pradhan@weil.com |
| 5 | |
| 6 | WEIL, GOTSHAL & MANGES LLP<br>Silicon Valley Office |
| 7 | 201 Redwood Shores Parkway<br>Redwood Shores, CA 94065 |
| 8 | Telephone: (650) 802-3000<br>Facsimile: (650) 802-3100 |
| 9 | Attorneys for Plaintiff<br>ILLUMINA, INC. |

10

**UNITED STATES DISTRICT COURT**

**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | | |
|---|---|---|
| 14 | ILLUMINA, INC., | Case No. 3:14-CV-01921-SI |
| 15 | Plaintiff, | **ILLUMINA, INC.'S REPLY TO**<br>**ARIOSA DIAGNOSTICS, INC.'S** |
| 16 | v. | **OPPOSITION TO MOTION TO**<br>**DISMISS COUNTERCLAIMS AND** |
| 17 | ARIOSA DIAGNOSTICS, INC., | **STRIKE DEFENSES** |
| 18 | Defendant. | Date: August 8, 2014<br>Time: 9 AM |
| 19 | | Place: Courtroom 10, 19th Floor<br>Judge: Hon. Susan Illston |
| 20 | | |
| 21 | | |
| 22 | | **CONFIDENTIAL – CONTAINS**<br>**HIGHLY CONFIDENTIAL** |
| 23 | | **INFORMATION - SUBJECT TO**<br>**PROTECTIVE ORDER – NOT TO BE** |
| 24 | | **DISCLOSED EXCEPT BY COURT**<br>**ORDER OR WRITTEN** |
| 25 | | **STIPULATION OF THE PARTIES** |
| 26 | | **PUBLIC REDACTED VERSION** |
| 27 | | |
| 28 | | |

1

## TABLE OF CONTENTS

2

**Page**

3

I. Introduction ...................................................................................................... 1

4

II. Argument ......................................................................................................... 2

5

     A.    Ariosa's Breach Of Contract Counterclaims Must Be Dismissed .......................... 2

6

         1.    Ariosa's Breach Counterclaims Are Not Subject To The Exception
              To The Arbitration Clause ................................................................. 2

7

8

         2.    Ariosa Cannot Dodge Arbitration With Allegations That Its Breach
              Counterclaims Are Related To Infringement ...................................... 4

9

         3.    Ariosa Distorts The Supply Agreement ...................................................... 6

10

     B.    Ariosa's Damages Allegations Are Insufficiently Pled ........................................... 8

11

     C.    Assignor Estoppel Bars Ariosa's Invalidity Case ................................................. 10

12

         1.    Assignor Estoppel Can Be Decided Based On The Pleadings ................ 10

13

         2.    Sufficient Facts Are Before The Court To Find Assignor Estoppel ........ 11

14

         3.    Whether Drs. Stuelpnagel And Oliphant Participated In Prosecution
              Of The '794 Patent Is Irrelevant. ...................................................... 13

15

         4.    Assignor Estoppel Extends To Ariosa ...................................................... 13

16

17

18

19

20

21

22

23

24

25

26

27

28

1

# TABLE OF AUTHORITIES

2

Page

3

CASES

4

*Affymetrix, Inc. v. PE Corp. (N.Y.)*,
   219 F. Supp.2d 390 (S.D.N.Y. 2002) ........................................................................ 6

5

6

*Aguilera v. Pirelli Armstrong Tire Corp.*,
   223 F.3d 1010 (9th Cir. 2000) ................................................................................... 8

7

*AT&T Techs., Inc. v. Commc'ns Workers of Am.*,
   475 U.S. 643 (1986) ................................................................................................ 2, 4

8

*BASF Corp. v. Aristo, Inc.*,
   872 F. Supp. 2d 758 (N.D. Ind. 2012) ..................................................................... 13

9

10

*Benedict v. Hewlett-Packard Co.*,
   2014 WL 234218 (N.D. Cal. Jan. 21, 2014) .............................................................. 9

11

*Brilliant Instruments, Inc. v. GuideTech, Inc.*,
   2014 WL 576244 (N.D. Cal. Feb. 12, 2014) ........................................................... 13

12

13

*Buttram v. Owens–Corning Fiberglas Corp.*,
   16 Cal.4th 520, 66 Cal.Rptr.2d 438, 941 P.2d 71 (1997) .......................................... 8

14

*CDx Diagnostics Inc. v. Histologics LLC*,
   2014 WL 3347525 (C.D. Cal. July 7, 2014) ........................................................... 12

15

16

*Central Admixture Pharm. Svcs., Inc. v. Advanced Cardiac Solutions, P.C.*,
   482 F.3d 1347, 1356 (Fed. Cir. 2007) ..................................................................... 10

17

*Chiron Corp. v. Ortho Diagnostic Sys., Inc.*,
   207 F.3d 1126 (9th Cir. 2000) ................................................................................... 5

18

19

*Choice Hotels Int'l., Inc. v. BSR Tropicana Resort Inc.*,
   252 F.3d 707 (4th Cir. 2001) ..................................................................................... 6

20

*Dean Witter Reynolds, Inc. v. Byrd*,
   470 U.S. 213 (1985) ................................................................................................... 5

21

22

*Diamond Scientific v. Ambico*,
   848 F.2d 1220 (Fed. Cir. 1988) ..................................................... 10, 11, 12, 13, 15

23

*Fiber Systems Intern. v. Applied Optical Systems, Inc.*,
   2008 WL 4482410 (E.D. Tex. Sept. 29, 2008) ....................................................... 15

24

25

*Illinois Tool Works, Inc. v. MOC Prods. Co., Inc.*,
   2010 WL 4314296 (S.D. Cal. Oct. 26, 2010) ....................................................... 4, 5

26

*Juniper Networks, Inc. v. Palo Alto Networks, Inc.*,
   881 F. Supp. 2d 603 (D. Del. 2012) ................................................................. 11, 14

27

28

*McKesson Corp. v. Health Robotics, S.R.L.*,
   2011 U.S. Dist. LEXIS 81192 (N.D. Cal. July 26, 2011) .......................................... 6

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*,
    473 U.S. 614 (1985) ............................................................................................. 2

*Morse v. ServiceMaster Global Holdings, Inc.*,
    2011 U.S. Dist. Lexis 82029 (ND Cal. July 27, 2011) ........................................ 5

*Multimedia Patent Trust v. Microsoft Corp.*,
    525 F. Supp. 2d 1200 (2007) ............................................................................. 10

*Openwave Sys. Inc. v. Myriad France S.A.S.*,
    2011 WL 1832999 (N.D. Cal. May 13, 2011) ................................................... 12

*Oracle Am., Inc. v. Myriad Group A.G.*,
    724 F.3d 1069 (9th Cir. Cal. 2013) ..................................................................... 4

*Roso-Lino Beverage Distribs., Inc. v. Coca-Cola Bottling Co. of New York, Inc.*,
    749 F.2d 124 (2d. Cir. 1984) ............................................................................... 5

*Saint-Gobain Performance Plastics Corp., HCM Division v. Truseal USA, Inc.*,
    351 F. Supp. 2d 290 (D. N.J. 2005) ............................................................. 11, 15

*Schultz v. iGPS Co. LLC*,
    2011 WL 37839 (N.D. Ill. Jan. 3, 2011) ........................................................... 15

*Smith v. Visa U.S.A., Inc.*,
    2011 WL 2709819 (N.D. Cal. July 12, 2011) ..................................................8, 9

*Synopsys, Inc. v. Magma Design Automation, Inc.*,
    2007 WL 420181 (N.D. Cal. Feb. 6, 2007) ....................................................... 15

*Vestar Dev. II, LLC v. Gen. Dynamics Corp.*,
    249 F.3d 958 (9th Cir. 2001) ...............................................................................9

*Zep Solar Inc. v. Westinghouse Solar Inc.*,
    2012 WL 1293873 (N.D. Cal. Apr. 16, 2012) ................................................... 10

**STATUTES AND RULES**

California Civil Code § 3301 ...................................................................................... 9

Fed. R. Civ. P. 12 ..................................................................................................... 12

Fed. R. Civ. P. 12(b)(6) ........................................................................................... 10

Fed. R. Civ. P. 12(f) ................................................................................................. 10

Fed. R. Civ. P. 56 ..................................................................................................... 12

# I.

## INTRODUCTION

The issues presented in Illumina's motion are simple: Because the contract that Illumina allegedly breached includes an arbitration provision, Ariosa's breach of contract counterclaims must be arbitrated. Similarly, because Ariosa's Chief Scientific Officer and Executive Chairman are named inventors on Illumina's '794 patent, assignor estoppel applies here. Despite the simplicity of these factual and legal issues, Ariosa's response was anything but straightforward. Rather, Ariosa's opposition is weighed down by lengthy exposition and citation to 51 different cases (plus one law review article), the majority of which are inapplicable. Ariosa's inability to provide a straightforward response in this case can only be interpreted as an admission as to the merit of Illumina's motion.

Indeed, the tools that Ariosa ultimately relies upon for its response are distortion and mischaracterization. First, Ariosa mischaracterizes the law of arbitration, asking the Court to overlook the liberal federal policy favoring arbitration and the rule that doubts must always be resolved in favor of arbitrability. Ariosa instead asks the Court to rely upon the discretionary standards applicable to supplemental jurisdiction, which have no place here. Next, Ariosa distorts the terms of the supply agreement, reading the narrow exception to the arbitration clause in ways that are unsupported by plain language, commonsense, and binding Supreme Court precedent. ████████████████████████████████████████████████████████████████ ██████████████████████████████████████████████████████ Finally Ariosa refuses to acknowledge that it is in privity with its own Executive Chairman and Chief Scientific Officer. While Ariosa has recently characterized these individuals as "co-founders" in public SEC filings, Ariosa now nit-picks its previous admissions so it can avoid assignor estoppel.

Simply put, Ariosa says everything it possibly can (without reservation) in its attempt to avoid dismissal here. Yet, as detailed below, none of what Ariosa says overcomes the simple logic of Illumina's motion, and Ariosa's counterclaims and defenses must be dismissed.

1

## II.

2

## ARGUMENT

3

### A.    Ariosa's Breach Of Contract Counterclaims Must Be Dismissed

4

#### 1.    Ariosa's Breach Counterclaims Are Not Subject To The Exception To The Arbitration Clause

5

6          Ariosa's brief reads as if Illumina must prove beyond a reasonable doubt that the

7    arbitration provision applies to Ariosa's breach of contract claims, and that doubts should be

8    resolved against arbitrability.  For instance, Ariosa contends that the Supreme Court held that

9    "disputes cannot be arbitrated where 'it may be said with positive assurance that the arbitration

10   clause is not susceptible of an interpretation that covers the asserted dispute.'"  Opp. at 6 (citing

11   *AT&T*).  Ariosa distorts the law.  Here is what the Supreme Court actually stated:

12          [I]t has been established that where the contract contains an arbitration clause, there
           is a presumption of arbitrability in the sense that an order to arbitrate the particular
13         grievance should not be denied unless it may be said with positive assurance that
           the arbitration clause is not susceptible of an interpretation that covers the asserted
14         dispute.  ***Doubts should be resolved in favor of coverage.***[1]

15   *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986) (citations omitted); *see

16   also Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 625 (1985) ("Thus,

17   insofar as the allegations underlying the statutory claims touch matters covered by the enumerated

18   articles, the Court of Appeals properly ***resolved any doubts in favor of arbitrability*.").  Thus,

19   even if Ariosa manufactures some doubt as to whether the arbitration clause in the supply

20   agreement covers Ariosa's breach of contract claims, the Court must still order arbitration.  Here,

21   there is not even a doubt, as the supply agreement unambiguously requires that Ariosa's breach of

22   contract claims be arbitrated.

23          Ariosa's contention that its breach counterclaims are not arbitrable turns entirely on a

24   narrow exception to the arbitration provision, which provides that "[t]his Section 31(c) shall not

25   apply to, and no arbitration shall resolve, disputes relating to issues of scope, infringement,

26   validity and/or enforceability of any Intellectual Property Rights."  Exh. 5 [Supply Agreement] §

27

28   ───────────────
[1] Emphasis supplied throughout unless otherwise noted.

31(c).  A plain reading of this provision is that the parties intended that patent issues regarding claim construction, infringement, invalidity, and unenforceability would not necessarily be subject to arbitration.  It does not stand for anything more, and nothing about this exception suggests that Ariosa's breach of contract claims cannot be arbitrated.

██████████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████████

████████████  Ariosa thus contends that Illumina breached the supply agreement merely by suing Ariosa for patent infringement.  *See* Dkt. No. 26 ¶ 49.  While such claims of breach are without merit, they can nonetheless be resolved solely by looking to the terms of the supply agreement.[2]  That is, Ariosa's breach counterclaims turn solely on the issue of contract interpretation.  Although Ariosa spends countless pages arguing that they are related to "scope, infringement, validity and/or enforceability of any Intellectual Property Rights," it is undisputed that to resolve Ariosa's breach of contract claims there will be no need to consider issues of claim construction, patent infringement, patent validity, or inequitable conduct.

Ariosa's brief is littered with examples highlighting this.  For example, Ariosa alleges that Illumina breached because ████████████████████████████████████████████

██████████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████████

████████████  Opp. at 7.  Whether the relevant contract provisions support Ariosa's position is a matter of contract interpretation.  Similarly, Ariosa argues that Illumina breached by "bringing a lawsuit against Ariosa for infringement of the '794 patent."  Resolution of that allegation requires determining whether, under the provisions of the contract, Illumina was prohibited from doing so.  Simply put, Ariosa's breach counterclaims raise a "dispute, claim or controversy arising out of or relating to the breach, termination, enforcement, interpretation or validity" of the supply agreement, not "scope, infringement, validity and/or enforceability of any Intellectual Property

---

[2] Below, Plaintiffs provide further detail regarding the nature of Ariosa's breach allegations and explain why they are meritless.  This detail further confirms that Ariosa's breach allegations turn solely on questions of contract interpretation and the intent of the parties.  *See infra* Part II.A.3.

Rights." As such, they are subject to arbitration, not district court litigation. Even assuming Ariosa has raised a modest doubt about this (it has not), under Supreme Court law, any such doubt must be resolved in favor of arbitration.

### 2. Ariosa Cannot Dodge Arbitration With Allegations That Its Breach Counterclaims Are Related To Infringement

Ariosa labeled its counterclaims as "Breach of Contract" and "Breach of Covenant of Good Faith and Fair Dealing." It did not give them labels related to patent scope, infringement, invalidity, or unenforceability. In its brief, Ariosa now requests that the Court "look past the labels the parties attach to their claims." Opp. at 5. Ariosa's request smacks of doubletalk and foreshadows the extensive spin Ariosa engages in to make its arguments. Unable to make an argument based on the plain language of the supply agreement, Ariosa instead relies upon a lengthy and twisted account of the supply agreement that supposedly leads to the erroneous conclusion that the Court may exercise discretion to hear its breach counterclaims because they are "inextricably linked" to or go "hand-in-hand" with an alleged license defense. *Id.* at 6-9.

First, a breach of contract claim is of a completely different nature than a patent license defense, presenting different adversarial stances and leading to different remedies. The two are not "inextricably linked." Regardless, to invoke the exception to the arbitration provision, Ariosa must do much more than manufacture a tenuous connection between its breach counterclaims and its defenses to patent infringement. Ariosa must provide "positive assurance[s] that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *AT & T*, 475 U.S. at 650 (1986). This is so because, "[t]here is generally a liberal federal policy favoring arbitration agreements. In accordance with that policy, ***doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration***." *Oracle Am., Inc. v. Myriad Group A.G.*, 724 F.3d 1069, 1072 (9th Cir. Cal. 2013) (internal citations and quotations omitted). Ariosa does not come close to providing assurances that overcome the policy favoring arbitration.

To support its position, Ariosa cites *Illinois Tool Work*s, a case having nothing to do with arbitration but dealing with supplemental jurisdiction in which the Court exercised discretion to conclude that plaintiffs would not be prejudiced by defendants supplementing their pleadings to

add breach of contract counterclaims. *Illinois Tool Works, Inc. v. MOC Prods. Co., Inc.*, 2010 WL 4314296 (S.D. Cal. Oct. 26, 2010). Similarly, Ariosa cites other cases regarding supplemental jurisdiction where Courts have exercised discretion in hearing state law claims with federal claims. *See* Opp. at 9 n.4. These cases are irrelevant. Although Courts have discretion in determining whether to hear a claim under supplemental jurisdiction, no such discretion exists with regard to arbitration. Instead, when an arbitration provisions applies—as it does here—the Court is divested of any power to hear the claim. *See Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985) ("By its terms, the Act leaves no place for the exercise of discretion by a district court, but instead mandates that district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed."); *Morse v. ServiceMaster Global Holdings, Inc.*, 2011 U.S. Dist. Lexis 82029, at *6 (ND Cal. July 27, 2011) (J. Illston) ("Therefore, if an arbitration agreement is valid, a district court has no discretion to deny a motion to compel arbitration.").

For the very same reasons, the Court should reject Ariosa's contention that its breach counterclaims are not arbitrable because the exception to the arbitration provision should be "read as broadly" as the arbitration provision itself. *See* Opp. at 11-12. Here, the arbitration provision calls for arbitration of "any dispute, claim or controversy arising out of or relating to the breach" of the supply agreement. Courts have confirmed that such language reflects a "broad and far reaching" agreement to arbitrate all disputes that touch upon the contract. *See Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1131 (9th Cir. 2000).[3] Thus, applying the liberal policy favoring arbitration, the Court must resolve all doubts about which clause of the supply agreement should be read more broadly in favor of arbitration—not against arbitration. Simply put, Ariosa asks the Court to ignore the law and put its thumb on the wrong side of the scale. *See, e.g.*, *Roso-Lino Beverage Distribs., Inc. v. Coca-Cola Bottling Co. of New York, Inc.*, 749 F.2d

---

[3] As part of its efforts to invoke the narrow exception to the arbitration provision based on the notion that its breach counterclaims are tied to its defenses, Ariosa spends pages attempting to establish that Illumina has conceded such a connection. *See* Opp. at 9-11. This is irrelevant. Illumina merely alleged Ariosa was in breach of the supply agreement by not obtaining licenses to the '076 and '430 patents, but no claim of breach was ever filed in district court. Instead, the arbitration provision properly applies to Illumina's allegations of breach, and if Illumina wishes to pursue these claims it will need to do so in arbitration. Illumina has never said otherwise.

124 (2d. Cir. 1984) ("Since this is a broad arbitration clause, providing for only a narrow exception, a court should compel arbitration unless there is positive, unambiguous assurance that the dispute is within that narrow exception."); *Choice Hotels Int'l., Inc. v. BSR Tropicana Resort Inc.*, 252 F.3d 707 (4th Cir. 2001) (adopting a narrow reading of an arbitration exemption in view of the policy favoring arbitration); *McKesson Corp. v. Health Robotics, S.R.L.*, 2011 U.S. Dist. LEXIS 81192, at *24 (N.D. Cal. July 26, 2011) ("[T]o the extent that this interpretation [of the exception] might be found reasonable, the policy in favor of arbitration nonetheless requires that the arbitration clause be enforced as to McKesson's claims because HRSRL's interpretation of the contract is also reasonable.").

Ariosa's citation to *Affymetrix, Inc. v. PE Corp. (N.Y.)*, 219 F. Supp.2d 390, 395-96, 295 n.6 (S.D.N.Y. 2002) does not help it. The arbitration exception in *Affymetrix* broadly exempted from arbitration disputes regarding "validity, construction, *interpretation* or performance of . . . *provisions* . . . relating to any Intellectual Property Rights." *Id.* Here, however, ████████ ████████████████████████████████████████████████████████████ ████████████████████████████ That is, in *Affymetrix*, disputes about "interpretation" of the agreement were exempt from arbitration, whereas here ████████████ █████████████████████████████ If anything, *Affymetrix* is a counterpoint to the instant case that shows why Ariosa's breach counterclaims must be arbitrated.

### 3. Ariosa Distorts The Supply Agreement

As detailed above, Ariosa's arguments are based upon mischaracterizing the law and the plain language of the supply agreement. Mischaracterization and distortion is a running theme of Ariosa's brief, and additional mischaracterizations that Ariosa makes regarding the merits of its breach counterclaims call for prompt correction.

████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ Opp. at 7. Ariosa has it backwards. First, Section 4(a) is entitled "Third Party and Illumina Intellectual Property Rights; *Customer Representation and Warranty on Use of Goods*." It thus relates to *Ariosa's* representations and warranties, not Illumina's. The section reads as follows:

1    [Ariosa's] intended use of Goods within the Customer Field of Use during the
     Term may require that it obtain from third parties **or from Illumina** (or its
2    Affiliates) additional rights or licenses above the rights conferred in Section 3(a).
     [Ariosa] acknowledges and agrees that it is ***solely [Ariosa's] responsibility***
3    ***throughout the Term to identify and ensure that it has all rights*** from third parties
     and, with respect to Secondary IP Rights in Goods, all rights from Illumina that are
4    necessary for its intended use of Goods in the Customer Field of Use, as it may be
     amended pursuant to Section 3(b).

9    Exh. 5 [Supply Agreement] § 4(a).  This provision makes clear that it was Ariosa's obligation to

10   obtain rights and licenses, and that there may well be Illumina IP that Ariosa must obtain to

11   perform its prenatal test.  Whether Ariosa's breach of contract claim is viable will boil down

12   solely to an interpretation of this portion of the supply agreement and the intent of the parties, not

13   anything related to patent scope, infringement, invalidity, or unenforceability.

26          Furthermore, Ariosa's contention that its license defense is rooted in the supply agreement,

27   *see* Opp. at 10-11, is not credible.  Ariosa's answers both in this case and in Case No. 12-cv-05501

28   say absolutely nothing about the substance of Ariosa's alleged license defense.  They include only

1    a boilerplate allegation that "Plaintiffs make claims that are barred or limited by an express

2    license." *See* Dkt. No. 15 ¶¶ 27; Dkt. No. 44 in Case No. 12-cv-05501 ¶¶ 40-41. If Ariosa

3    believed its license defenses were rooted in the supply agreement, it surely would have said so in

4    its original pleadings. But Ariosa did not even mention the supply agreement until it filed its first

5    amended answer in this case, and it did not even contend that its license defense was related to the

6    supply agreement until opposing the instant motion. The reality is that Ariosa's breach

7    counterclaims are concoctions that Ariosa worked up after filing its original answer in this case.

8          **B.**     **Ariosa's Damages Allegations Are Insufficiently Pled**

9         As to the issue of whether Ariosa has adequately pleaded damages, Ariosa's primary

10   complaint is that Illumina is attempting to hold it to "a novel, heightened standard." Illumina does

11   no such thing. Illumina's argument is that Ariosa's pleading is insufficient because (1) Ariosa

12   does not allege actual harm, only theoretical or potential harm, and (2) Ariosa does not allege a

13   causal connection between the alleged breach and the harm suffered. It is well settled that Ariosa

14   must allege these facts. *See Aguilera v. Pirelli Armstrong Tire Corp.*, 223 F.3d 1010, 1015 (9th

15   Cir. 2000) ("Under California law, a breach of contract claim requires a showing of appreciable

16   and actual damage."); *Buttram v. Owens–Corning Fiberglas Corp.*, 16 Cal.4th 520, 531 n. 4, 66

17   Cal.Rptr.2d 438, 941 P.2d 71 (1997) ("[T]o be actionable, harm must constitute something more

18   than nominal damages, speculative harm, or the threat of future harm-not yet realized . . . .").

19        However, Ariosa only alleges potential or theoretical harms. For example, Ariosa alleges

20   that the filing of the infringement action was an "attempt" to inhibit competition and has a

21   "purpose" of diminishing Ariosa's ability to compete and "threatens" to disrupt Ariosa's

22   relationships. *See* Opp. at 11. These are not concrete harms, but potential harms. Damages for

23   potential harms are not recoverable. *See Aguilera*, 223 F.3d at 1015 ("To show that they suffered

24   actual damage in March 1995, appellants ask us to recognize a 'fear of future layoff' as an

25   actionable injury. We decline to do so."). Moreover, Ariosa fails to causally link any potential

26   harm to the breach. That is, Ariosa fails to specify how it was harmed by the breach. *See, e.g.,*

27   *Smith v. Visa U.S.A., Inc.,* 2011 WL 2709819, at *2 (N.D. Cal. July 12, 2011) (J. Illston) (granting

28   motion to dismiss breach of contract claim for failure to allege sufficient facts, such as, "how

1   plaintiff was damaged by that breach").

2          Citing no authority, Ariosa argues that "Illumina misstates the law" and that the standard

3   set forth in California Civil Code § 3301, requiring that damages must be "clearly ascertainable"

4   concerns a trial standard that is inapplicable here.  Opp. at 14.  Not so.  In *Vestar*, the Ninth Circuit

5   affirmed the district court's dismissal of a complaint alleging breach of contract explaining that the

6   damages were too speculative.  *Vestar Dev. II, LLC v. Gen. Dynamics Corp.*, 249 F.3d 958, 962

7   (9th Cir. 2001).  The Ninth Circuit explained that plaintiff "fails to address the very next section,

8   3301, and California case law that require that damages not be speculative or, conversely, that they

9   be proved to a reasonable certainty."  *Id*.  Thus, because plaintiff could not allege damages with

10  reasonable certainty they were dismissed.  *Id*.  The same is true here.  Ariosa has not (and cannot)

11  allege "clearly ascertainable" damages that could be proven with "reasonable certainty."

12         Nor can Ariosa benefit from *Benedict v. Hewlett-Packard Co.*, 2014 WL 234218 (N.D.

13  Cal. Jan. 21, 2014).  In *Benedict*, HP counterclaimed for breach of contract and alleged that it "has

14  been harmed and damaged by [Benedict's] theft, secret retention, and/or use of HP's commercially

15  valuable property, including its valuable confidential information and proprietary developments;

16  such harm and damages includes but are not necessarily limited to lost profits, unjust enrichment,

17  and/or reasonable royalties."  *Id*. at *4.  The court held that such pleadings were sufficient because

18  "'[l]ost profits' and 'reasonable royalties' are specific allegations of damage."  *Id*. at *5.  Here,

19  only potential harms are alleged.  Moreover, Ariosa fails to allege facts establishing a causal link

20  between those harms and the alleged breach.

21         In a footnote, Ariosa argues that because it requested "specific performance," its claims

22  cannot be dismissed for being insufficiently alleged.  Opp. at  14 n.7.  Ariosa's position defies

23  logic because it suggests that by requesting a particular remedy (*e.g.*, specific performance) a party

24  can circumvent the pleading requirement for a claim—pleading actual damages.

25         Contrary to Ariosa's contentions, amendment would be futile.   Ariosa has made

26  abundantly clear that its allegations of breach are tied directly to Illumina filing a claim for patent

27  infringement.  Ariosa's counterclaims even state as follows: "Illumina breached the Agreement by

28  bringing a lawsuit against Ariosa for infringement of the '794 patent."  Dkt. No. 26 ¶ 49; *see also*

1    Opp. at 5.  As Illumina explained in its motion, the only non-theoretical damages Ariosa could

2    allege would be related to litigation expenses from having to defend against the suit.  However,

3    under California law, attorneys' fees and litigation costs cannot be recovered unless the agreement

4    or a statute provides for such, and there is no agreement or statute that so provides.  *See* Dkt. No.

5    31 at 6.  Ariosa does not dispute this in its opposition.

6          **C.**      **Assignor Estoppel Bars Ariosa's Invalidity Case**

7                    **1.**      **Assignor Estoppel Can Be Decided Based On The Pleadings**

8          As to assignor estoppel, Ariosa focuses largely on procedural arguments, tacitly baring its

9    weakness on the merits.  Briefly, Ariosa contends that regional circuit law governs the instant

10   motion and that under regional circuit law the Court cannot grant a motion to dismiss based on

11   assignor estoppel at the pleading stage.  *See* Opp. at 16-18.  Ariosa is wrong.

12         In questions that are unique to patent law—such as the assignor estoppel doctrine—Federal

13   Circuit law governs.  This holds true in connection with questions regarding the sufficiency of

14   pleadings related to patent law.  *See, e.g.*, *Central Admixture Pharm. Svcs., Inc. v. Advanced*

15   *Cardiac Solutions, P.C.*, 482 F.3d 1347, 1356 (Fed. Cir. 2007) ("Whether inequitable conduct has

16   been adequately pled is a procedural matter, but since it bears on an issue that 'pertains to or is

17   unique to patent law,' *we will apply our own law to the question of whether the pleadings were*

18   *adequate*.").  The very cases that Ariosa cites confirm this, though Ariosa omits the relevant text

19   from its citations.  *See, e.g.*, *Zep Solar Inc. v. Westinghouse Solar Inc.*, 2012 WL 1293873, at *2

20   (N.D. Cal. Apr. 16, 2012) ("Although motions to strike under Rule 12(f) are generally considered

21   procedural matters governed by regional circuit law, *Federal Circuit law governs the sufficiency*

22   *of allegations of inequitable conduct.*"); *Multimedia Patent Trust v. Microsoft Corp.*, 525 F.

23   Supp. 2d 1200, 1211 (2007) ("Although motions to strike under Rule 12(f) or dismiss pursuant to

24   Rule 12(b)(6) are generally considered procedural matters governed by the law of the regional

25   circuit, *the sufficiency of inequitable conduct pleadings is governed by Federal Circuit law*.").

26         Thus, contrary to Ariosa's claim that the law of the Ninth Circuit controls as the relevant

27   "regional circuit law," Opp. at 18, the Federal Circuit's holding in *Diamond Scientific v. Ambico*,

28   848 F.2d 1220 (Fed. Cir. 1988) applies here.  Other district courts have applied *Diamond* to the

question of assignor estoppel under similar circumstances. *See, e.g.*, *Saint-Gobain Performance Plastics Corp., HCM Division v. Truseal USA, Inc.*, 351 F. Supp. 2d 290, 293-294 (D. N.J. 2005) (relying upon *Diamond* in granting plaintiffs' motion to strike invalidity counterclaims and affirmative defenses). In fact, Ariosa's own counsel at Irell & Manella recently applied *Diamond* to successfully obtain a finding of assignor estoppel **at the pleadings stage**. *See* Exh. 6 [Juniper's Motion to Strike]; *Juniper Networks, Inc. v. Palo Alto Networks, Inc.*, 881 F. Supp. 2d 603, 608 (D. Del. 2012) (finding inventor Zuk to be in privity with defendant PAN). As detailed further below, *Diamond* is right on point here, and the Court must dismiss Ariosa's invalidity counterclaims and strike its invalidity defenses.

## 2. Sufficient Facts Are Before The Court To Find Assignor Estoppel

Ariosa cannot legitimately challenge the applicability of *Diamond* on any substantive basis. In *Diamond*, the Federal Circuit examined a motion to strike invalidity defenses raised by defendant Ambico in its answer to plaintiff Diamond's complaint. *Diamond*, 848 F.2d at 1222. The Federal Circuit granted Diamond's motion, finding the doctrine of assignor estoppel applicable because of two factors: (1) inventor-assignor Welter's "Oath, Power of Attorney and Petition, which attests to his belief in the validity of the patents;" and (2) Welter's assignation of the rights to his invention, for which he received "valuable consideration." *Id.* at 1225-1226; Mtn. at 8. The Federal Circuit explicitly stated that these two factors "were enough, in our view, to support application of the estoppel." *Diamond*, 848 F.2d at 1227.

The very factors that confirmed assignor estoppel in *Diamond* are present here. After developing the invention described in the '794 patent, Drs. Stuelpnagel and Oliphant signed a "Combined Declaration and Power of Attorney" in connection with the filing of the '794 patent application. In this declaration, Drs. Stuelpnagel and Oliphant affirmed that each "believe[d] we are . . . and original, first and joint inventor (if plural names are listed below) of the subject matter which is claimed" in the application. *See* Exh. 2 [Declaration and Power of Attorney] at 1. This declaration is part of the '794 patent's file history. Drs. Stuelpnagel and Oliphant assigned their "entire right, title and interest" in the '794 patent application and inventions to Illumina, in exchange for "good and valuable consideration." Exh. 3 [Patent Assignment] at

1    ILMNAA00007312. An earlier-dated document that also memorializes these assignments was

2    submitted during prosecution of the '794 patent application. Exh. 7 [File History] at

3    ILMNAA00007462-7464. In its opposition, Ariosa does not contest that the declarations and

4    assignments by Drs. Stuelpnagel and Oliphant in connection with the '794 patent application were

5    duly executed. On the basis of Drs. Stuelpnagel and Oliphant's declarations and assignments, and

6    the holding in *Diamond*, they are estopped from now claiming that the '794 patent is invalid.

7         Unable to challenge *Diamond* on the merits, Ariosa claims that Illumina's motion relies

8    upon evidence beyond the pleadings that cannot even be the subject of judicial notice. Opp. at 18.

9    Ariosa distorts the facts and law yet again. First, the fact of Drs. Stuelpnagel and Oliphant's

10   assignment of the '794 patent application to Illumina—for which each acknowledged receipt of

11   valuable consideration—is in Illumina's complaint. Dkt. No. 1 ¶ 13. Moreover, Drs. Stuelpnagel

12   and Oliphant's signed oaths attesting to the '794 patent application's validity and their

13   assignments of the '794 patent to Illumina of the '794 patent are matters of public record that were

14   included in Patent Office filings during prosecution of the '794 patent. Exh. 2 [Declaration and

15   Power of Attorney] at ILMNAA00007453-7456, Exh. 7 [File History] at ILMNAA00007462-

16   7464. In deciding a Rule 12 motion, "[t]he types of matters that are not considered 'outside the

17   pleadings for purposes of conversion [to a Rule 56 summary judgment motion]' include: 'various

18   types of exhibits that are attached to the pleading, ***matters of which the district court can take***

19   ***judicial notice*** . . . ." *CDx Diagnostics Inc. v. Histologics LLC*, 2014 WL 3347525, at *2 (C.D.

20   Cal. July 7, 2014). Such matters include filings as part of a patent application. *See id.* ("Exhibits

21   1-4 to the Motion are from the records of the USPTO, including. . . the individual assignment

22   forms filed with the USPTO. Generally, district courts take judicial notice of certain facts

23   associated with such documents…."); *see also Openwave Sys. Inc. v. Myriad France S.A.S.*, 2011

24   WL 1832999, at *4 (N.D. Cal. May 13, 2011).

25        As the Federal Circuit explained in *Diamond*, "when a plaintiff raises an equitable

26   challenge to a defense, such as assignor estoppel, a court ought to have a bit more latitude to

27   consider materials beyond the pleadings, particularly if they present uncontested factual matters."

28   Here, however, the Court does not need such latitude because, as explained above, the evidence

1     that confirms assignor estoppel is within the pleadings for the purposes of this motion.

2                 **3.**        **Whether Drs. Stuelpnagel And Oliphant Participated In Prosecution**
                            **Of The '794 Patent Is Irrelevant.**

3

4        Ariosa further contends that assignor estoppel does not apply because there are no facts

5     presented as to Drs. Stuelpnagel and Oliphant's involvement in the prosecution of the '794 patent.

6     Opp. at 19. Ariosa does not actually argue that Drs. Stuelpnagel and Oliphant did not participate

7     in the prosecution of the '794 patent application, instead simply alleging a lack of facts. Whatever

8     the case, an inventor's participation in prosecution of a patent application does not meaningfully

9     impact the application of assignor estoppel. *See Diamond*, 848 F.2d at 1226 ("The inventor's

10    active participation in the prosecution and preparation of the patent applications . . . is not

11    necessary to the result."). Drs. Stuelpnagel and Oliphant's broad assignments of the rights in their

12    invention in and of themselves support application of assignor estoppel here. *See, e.g., id.* ("That

13    Diamond may have later amended the claims in the application process (a very common

14    occurrence in patent prosecutions), with or without Dr. Welter's assistance, does not give

15    appellants' arguments against estoppel any greater force."); *see also BASF Corp. v. Aristo, Inc.*,

16    872 F. Supp. 2d 758, 775 (N.D. Ind. 2012) (assignor estoppel applied even though patent claims

17    changed during prosecution).[4]

18                 **4.**        **Assignor Estoppel Extends To Ariosa**

19        Finally, Ariosa argues that whether Ariosa is estoped from challenging the validity of the

20    '794 patent under assignor estoppel—based on privity with Drs. Stuelpnagel and Oliphant—

21    cannot be decided on the facts before the Court. Opp. at 20. Ariosa is incorrect; there is ample

22    evidence before this Court confirming privity.

23        At the outset, Illumina noted Drs. Stuelpnagel and Oliphant's affiliations with Ariosa in its

24

---

25    [4] In the one case Ariosa cites to support its contention that the participation of Drs. Stuelpnagel
and Oliphant in prosecution of the '794 patent is relevant, this Court stated that an inventor's

26    participation in prosecution of a patent may "challenge the strength of the assumption that the
assignor represented that what he sold was valuable." Opp. at 19. Notably, in that case, this Court

27    decided in favor of applying assignor estoppel because "Brilliant ma[de] no such showing.
Brilliant never challenge[d] the circumstances of the patent prosecution or assignment process."
*Brilliant Instruments, Inc. v. GuideTech, Inc.*, 2014 WL 576244 at *3 (N.D. Cal. Feb. 12, 2014).

28    Ariosa similarly makes no challenge regarding the circumstances of either the patent prosecution
or assignment process. If anything, *Brilliant* confirms that assignor estoppel applies here.

1  complaint.  Exh. 8 [Illumina's Complaint] at 4.  Furthermore, Ariosa has held out Drs. Stuelpnagel

2  and Oliphant as co-founders of the company.  *See* Mtn. at 10; Exh. 4 [March 24, 2014 S-1

3  Statement] at 87-88.  On this basis alone, privity must be found between Ariosa and Drs.

4  Stuelpnagel and Oliphant.  Ariosa's own counsel at Irell & Manella has previously recognized and

5  successfully argued that facts such as these confirm privity.  *See* Exh. 6 [Juniper Motion to Strike]

6  at 13; *Juniper*, 881 F. Supp. 2d at 608.

7       Ariosa now attempts to distance itself from Drs. Stuelpnagel and Oliphant by taking issue

8  with ***its own statements*** in SEC filings, claiming that Drs. Stuelpnagel and Oliphant's affiliations

9  with Ariosa began after the company was founded and thus they are not "co-founders."  Opp. at

10  20.  Put another way, Ariosa argues that its statements in its registration with the SEC in

11  preparation for its initial public offering—a public document whose purpose is to disseminate

12  information about the company's operations and management—are untruthful or, at best,

13  misleading.  Ariosa's arguments are disingenuous, and portend the lack of merit in its attemtps to

14  challenge privity.

15       As Ariosa knows full well—and as commonsense would suggest—its Executive Chariman

16  and Chief Scientific Officer are deeply integrated into Ariosa's operations.  Ariosa has called Dr.

17  Stuelpnagel, the Executive Chairman of Ariosa, a leader of the company and a member of its

18  management team.  *See, e.g.*, Exh. 9 [Jan. 9, 2012 Ariosa Press Release Re: Series C Financing];

19  "About Ariosa Diagnostics," *available at* www.ariosadx.com/company-overview/.  Consistent

20  with this, in sworn deposition testimony from Ariosa's litigation with Sequenom, Dr. Stuelpnagel

21  testified that he has "been involved in most aspects of Ariosa."  Exh. 10 [Stuelpnagel Dep. Tr.] at

22  36:3-4.  Accordingly, Ariosa has relied upon Dr. Stuelpnagel as a declarant in its litigation with

23  Sequenom and presented him as an individual with deep knowledge as to Ariosa's product and

24  business.  Exh. 11 [Stuelpnagel Declaration] (Dr. Stuelpnagel's declaration that he "personally

25  know[s] the facts set forth in this declaration" related to the company's founding, research and

26  development of its product, and the "extensive clinical studies" of the technology used in Ariosa's

27  Harmony™ Prenatal Test).  Dr. Stuelpnagel is also a named author on the publication of Ariosa's

28  "First Peer-Reviewed Data For New Non-Invasive Prenatal Test."  Exh. 9 [Jan. 9, 2012 Ariosa

1   Press Release Re: Publication of Peer-Reviewed Data].

2          With regard to Dr. Oliphant, as Ariosa's Chief Scientific Officer he is intricately involved

3   with the design and development of the Harmony Test.  *See* "About Ariosa Diagnostics,"

4   *available at* www.ariosadx.com/company-overview/ (describing Dr. Oliphant as having "led

5   development of the company's proprietary assay platform").  Ariosa has put forth no argument to

6   rebut this fact, nor can they.

7          Against this backdrop, Ariosa parses its language carefully and does not actually argue that

8   Drs. Stuelpnagel and Oliphant are not in privity.  Instead, Ariosa contends that the Court does not

9   have sufficient information to decide the question,[5] focusing instead on "significant concerns" and

10  baseless accusations regarding Illumina's motives in this case.  *See* Opp. at 23-24.  Such

11  allegations have nothing to do with assignor estoppel.  In fact, the only thing that would be unjust

12  here would be to permit Ariosa to disavow its close relationship with Drs. Stuelpnagel and

13  Oliphant.  *See Diamond*, 848 F.2d at 1225; *Saint-Gobain*, F. Supp. 2d at 295.  This would result in

14  Ariosa benefiting from the accomplishments of its executives—including patents listing those

15  executives as inventors—when it suits the company, while at the same time attacking those very

16  same accomplishments when it does not.  Such cannot be the correct outcome.

17

18

19

20

21

22

---

23  [5] The cases Ariosa cites offer it no help.  *Schultz v. iGPS Co. LLC*, 2011 WL 37839 (N.D. Ill. Jan.
    3, 2011) stands for the proposition that in some cases, evaluation of the relationship between an
24  assignor and a party requires further information.  *Fiber Systems Intern. v. Applied Optical
    Systems, Inc.*, 2008 WL 4482410 (E.D. Tex. Sept. 29, 2008)  is even less persuasive. In that case,
25  the defendant had submitted evidence suggesting that the assignor's knowledge was not required
    for the alleged infringement.  *Id.* at *2.  Ariosa has made no such submission here.  Finally,
26  Ariosa's attempt to distinguish the this case from *Synopsys, Inc. v. Magma Design Automation,
    Inc.*, 2007 WL 420181 (N.D. Cal. Feb. 6, 2007) on the basis of the progression of the case in
27  *Synopsys* falls flat.  Though the finding in *Synopsys* was rendered after the case had progressed
    beyond claim construction, it was based upon "all of the admissions" before the Court in its
28  previously-decided assignor estoppel holding from earlier in the case.  *Id.* at *4 ("'[T]here is
    simply nothing concerning the issue of assignor estoppel that is left for the parties to litigate.'").

1                                     Respectfully submitted,

2   Dated: July 21, 2014                    WEIL, GOTSHAL & MANGES LLP

4                                 By: _____*/s/ Edward R. Reines*_____

5                                      Edward R. Reines
                                        Attorneys for Plaintiffs
6                                        Verinata Health, Inc.